## John B. Hunter

*v.*

## Charles B. Harris, Admr.

*Filed at Springfield January 18, 1890.*

1. Evidence—*denying execution of promissory note—evidence under that issue—generally, as to the circumstances surrounding the parties, and the dealings between them.* On an issue as to the execution of a promissory note, when the proof as to the genuineness of the signature is so equally balanced as to render it difficult to determine on which side the preponderance of the evidence is, evidence tending to show a reason for the execution of the note, and a reasonable probability or improbability that the defendant made and delivered the same, is not only competent, but highly important for the consideration of the jury.

2. And the defendant will have the right to make proof of such facts and circumstances as may tend to show the note is not his, and render it improbable that he executed the same. To do this, the various transactions between the parties at or about the date of the note, and before, out of which a liability could have arisen, what was done and said by them at the time the parties were together seeking to settle their old transactions, and the fact, if true, that there was nothing between them out of which the note could have grown, become material.

3. Same—*time and place of execution of note—as bearing on the issue.* The validity of a note actually made and delivered does not depend upon the correctness of its date, or that it was executed at the time and place therein named. It may be good without any date, taking effect from its delivery. But the time of its execution and delivery may become a material and important question, and evidence relating thereto be competent, as, when the execution of the note is put in issue, and the testimony as to the genuineness of the signature is conflicting.

4. Same—*the affidavit of the party denying the execution—whether admissible.* On such issue, the affidavit of the defendant denying the execution of the note sued on, is not admissible, and can not be considered in determining whether he executed and delivered the note.

5. Same—*of an instruction—as limiting the scope of the evidence.* Upon the same issue, the court instructed the jury, on behalf of the plaintiff, that it was not material whether the note was executed at the time and place it bore date or at another time and place, if they believed, from the evidence, that it was in fact signed by the defendant: *Held,* that while the instruction contained a correct proposition of law in the abstract, it was calculated to mislead the jury, and give them to under-

stand that the only material evidence was the testimony as to the signature of the note, alone.

6. PROMISSORY NOTE—*whether delivered—presumption.* Where the signature to a promissory note is shown to be in the handwriting of the alleged maker, the possession of the payee will raise a presumption of its delivery. But if the note is a forgery, no such presumption will arise.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. BROWN, WHEELER & BROWN, and Messrs. JOHN M. & JOHN MAYO PALMER, for the appellant.

Messrs. PATTON, HAMILTON & SHUTT, for the appellee.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This was assumpsit, in the circuit court of Sangamon county, by Charles B. Harris, administrator of the estate of William S. Smith, deceased, against John B. Hunter. The declaration counted upon a promissory note for $10,000, purporting to have been executed by the defendant at Buffalo, Sangamon county, Illinois, March 6, 1880, and payable to William S. Smith, or order, five years after date, with interest from date at six per cent per annum. The defendant filed the general issue, and also a special plea denying the execution and delivery of the note, both of which are duly verified. A trial was had, resulting in a verdict and judgment in favor of the plaintiff, which was reversed by the Appellate Court for the Third District for an error of the court in the rejection of testimony offered by the defendant, and the cause remanded. A second trial resulted in judgment for the plaintiff for $14,140, and costs of suit. The defendant appealed to the Appellate Court, where the judgment was affirmed, and he prosecutes this further appeal.

On the trial, the only issue of fact was whether the defendant signed and delivered the note. There was no pretense that the note was executed by any one else authorized by the defendant. Over twenty witnesses testified, on either side, as to the signature of the note, those for the plaintiff giving their opinion that the signature was that of the defendant, and those for him that it was not his signature. The proof as to the genuineness of the signature was very nearly equally balanced, and it is exceedingly difficult to determine on which side it was entitled to the greater weight. Under such circumstances, evidence tending to show a reason for the execution of the note, and a reasonable probability or improbability that the defendant made and delivered the same, was not only competent, but highly important for the consideration of the jury.

The note sued on purports to have been executed at Buffalo, Illinois, March 6, 1880, and it is declared on as having been made and delivered at that time and place, and there was no evidence given of its execution and delivery at any other time or place, or having a tendency to show that it was, or might have been, executed elsewhere, or at a different time. It therefore became important to know whether the parties were present at such time and place, and what they then did in respect of their business affairs.

Before examining the evidence in respect of this important matter, a brief statement of the antecedent relations and dealings of the parties will enable us to better understand the particular matter in controversy. The firm of Hunter & Co., of which the defendant was a member, prior to 1873 was engaged extensively in business in Bond county, in this State, and Smith, the intestate, had indorsed the firm's paper to a considerable amount. About 1873, the firm of Hunter & Co. failed, largely indebted, and the members of the firm went into bankruptcy, and were subsequently discharged from their debts not paid, leaving Smith, their indorser, liable for over

$50,000 on their account, a large part of which he paid. He lived at Greenville, in Bond county. The defendant, in 1873 or 1874, removed from Greenville to Buffalo, in Sangamon county, Illinois, where he again went into business. Smith being financially embarrassed, on the evening of March 5, 1880, came to Buffalo to see Hunter for the purpose of a settlement, and to get such financial aid as he could. On his solicitation, the defendant gave him a written promise, bearing date at Buffalo, March 6, 1880, reading as follows:

"*W. S. Smith, Greenville, Illinois:*

"DEAR SIR—I have concluded, owing to our failure, and your having to pay money for our old firm, that I will pay you, in 1882, $5000, provided I do not have to pay any money on your account to Bank of Commerce. If so, that amount to be deducted from this amount, together with any costs that may accrue.
Yours very truly,
JOHN B. HUNTER."

The only person present when this writing was executed and delivered, was William H. Hunter, a son of the defendant, who testifies that he was present during the entire transaction; that after the matter was closed, he took Smith to the depot on his return home; that his father wrote the agreement above given, in his presence, and then read the same aloud, and that Smith then read the same, but was not satisfied therewith; that the defendant then told Smith he could "take that or nothing," and Smith consented to take it, and, on the road to the depot, said that his father had given him this paper for $5000; that he was not satisfied with it, but had settled for that sum. The defendant also proved by Joshua M. Smith, the brother of the intestate, that in the spring of 1880 the intestate visited the defendant, and said, on his return, that he had made arrangements for Hunter to pay $5000, or assume that much in some way or other, and that that was the best he could do with Hunter. A. G. Henry testified that Smith used to say that he

was going to see "Barney," (the defendant,) and see if he could not do something for him; that Smith went from Greenville to Buffalo to see Hunter; that he saw Smith soon after his return, who told him that Hunter had agreed to give him $5000, and soon after he saw the paper in the hands of a St. Louis party, to whom it had been traded. Phelps testified that Smith said to him he had been up to see Hunter concerning the old matter; that Hunter had given him some kind of a contract, which he described. He said it was for $5000, and that Hunter insisted on putting a condition in the paper in regard to some payment to the Bank of Commerce. McNeal testified that Smith told him he was going up to try and make a settlement with Hunter, and get some money out of him on their old matters; that after Smith returned, he said he got $5000 from Hunter in an obligation, and that was all he could get. It is not shown that there were other transactions between the parties out of which the note could have arisen, or upon which it could have been predicated.

Smith transferred the five thousand dollar obligation to Eaton, and Hunter afterward gave his note therefor, less $250 he had paid Smith, and subsequently paid the note. A letter from Smith to Hunter was introduced in evidence, dated November 27, 1880, in which Smith spoke of his urgent need of money, and added: "I want you, for God's sake, to send me $1000, on your agreement by that time—October 1. Just think of my situation, at my time of life, to be in this condition; also think what I have done for you. Let me hear from you immediately, whether you will do what I ask of you or not. This is a ground-hog case with me, and you must help me."

The evidence shows that the note sued on is written on a different kind of paper than that used in the written agreement of the same date, March 6, 1880. The ink of the body of the note is different from that used by the defendant in the other paper, and the date of the note and the signature are

in different ink from that used in the body of the note. A daughter of the intestate testifies, that in the latter part of March, 1883, having occasion to examine her father's papers, she found the note sued on among them, and further, that she believed the body of the note was in the handwriting of her father; but the evidence, as a whole, does not show, perhaps, it to be in the handwriting of either Smith or Hunter.

In this state of the evidence, the court, at the request of the plaintiff, gave the following instruction to the jury:

"The court instructs the jury, that it is not material whether the note sued on was executed at the time and place it bears date, or at another time and place, provided you believe, from all the evidence, that it was in fact signed by the defendant, and delivered by him to William S. Smith in the lifetime of said Smith."

The giving of this instruction is assigned for error.

It is true that the validity of a note actually made and delivered does not depend upon the correctness of its date, or that it was executed at the time or place therein named. It may be a good note without any date, taking effect from its delivery by the maker. But the time of its execution and delivery may become a material and important question. In this case the parties to the note lived far apart, and the only time when they are shown to have been together, for several years before the date of this note and up to Smith's death, was the day on which the note bears date. At that time, the evidence tends strongly to show that no such instrument was given by the defendant to Smith, but that, on settlement between them of their affairs, an obligation essentially different, both in amount and nature of the undertaking, was given, and this would seem to be corroborated by the subsequent declarations of Smith, as before shown. Smith's letter, as late as November 27, 1880, urges the defendant to send him $1000 "on his agreement." Without recapitulating, it can not be said that this evidence is not material on the question of whether the defendant exe-

cuted the note sued on or not, no correspondence being in proof, or anything else tending to show its execution in fact at any other time or place. The pertinency of this evidence was conceded. It tended to show that the note was not made and delivered at the time and place therein mentioned. The court, by the instruction under consideration, told the jury that such proof was not material, provided they believed, from all the evidence, that the note was in fact executed and delivered by the defendant to Smith, in his lifetime. Aside from the testimony as to the genuineness of the defendant's signature thereto, there is no evidence in the record upon which to base the latter part of the instruction. We think that while the instruction contains a correct proposition of law in the abstract, it was calculated to mislead the jury, by giving them to understand that all of the evidence offered to show that no such note was executed on the day or place mentioned in the note, was immaterial, and thus confine the jury to the consideration of the evidence of the witnesses relating to the signature of the note alone.

The signature of the note being established to be in the handwriting of the defendant, the possession of Smith would raise a presumption of its delivery. But if the note was a forgery, its possession would afford no such presumption. As we have seen, the evidence as to the handwriting was conflicting. In such case, the defendant had the undoubted right to make proof of such facts and circumstances as would tend to show the note was not his, and render it improbable that he executed the same. To do this, the various transactions between the parties at about the date of the note and before, out of which a liability could have arisen, what was done and said by them at the time the parties were together seeking to settle their old transactions, the fact, if true, that there was nothing between them out of which it could have grown, became material. The note is presumed, if unexplained, to have been executed upon the day it bears date, if executed at all.

The jury allowed the plaintiff $4840 interest, which a slight computation will show must have been calculated from the date of the note, and which would indicate that the jury, under the instruction, found that the note was made and delivered upon that day. However this may be, the case is extremely close in its facts. We do not care to indicate, as it would be clearly improper for us to do so, where we think the preponderance is; but nothing should have been done by the court to have weakened or destroyed the legitimate effect of competent evidence, or evidence of facts and circumstances having a tendency to illustrate the issue involved, offered by either party to the note.

Complaint is also made to the plaintiff's second instruction, which is as follows:

"The court instructs the jury, that the affidavit of the defendant denying the execution of the note is not evidence, and they have no right to consider it in determining whether the defendant executed and delivered the note in evidence."

The only effect of the affidavit filed with the pleas was to cast the burden upon the plaintiff to prove the execution of the note as at common law. The defendant was not a competent witness in his own behalf, the plaintiff suing in a representative capacity. In practice it is doubtless difficult, if not impossible, to prevent the jury from knowing that the defendant had denied, under oath, the execution of the instrument, and the instruction was proper, as a matter of precaution, and its giving was not error.

We are inclined to think that the giving of the instruction first considered was such prejudicial error as to require a reversal of the judgment, and it is reversed accordingly, and remanded to the circuit court for further trial.

*Judgment reversed.*