Decided February 24, 1896.

## MATLOCK v. WHEELER.

[43 Pac. 867.]

1. RELEVANCY OF EVIDENCE.— Collateral facts that may tend to enable a witness to remember the principal fact concerning which he is testifying, or to strengthen or weaken his conviction in regard thereto, may be submitted to a jury to aid them in determining the correctness of the witness's story; thus evidence tending to show that the amount stated in a note includes interest to maturity upon the actual amount of the debt is admissible upon an issue whether the holder of the note erased the word "maturity" after the word "from" in the interest clause without the consent of the makers.

2. INSTRUCTIONS MUST BE CONSIDERED AS A WHOLE.— An instruction which if standing alone would be susceptible of the construction that it makes the consent to or ratification of the alteration of a note by any one of the makers binding upon all is not prejudicially erroneous, where in other instructions the jury is clearly charged that only the individual consenting or ratifying would be bound in such case.

3. RATIFICATION OF AGENT'S ACT.— Where the attention of a principal is especially called to an unauthorized act of an agent he should disavow it within a reasonable time, or he will be held to have ratified it.

4. DISMISSAL OF APPEAL— JUSTIFICATION OF SURETIES— CODE, ? 537.— Under section 537, subdivision 4, providing that where a party in good faith gives notice of appeal, and thereafter omits to do any other act necessary to perfect the appeal, the appellate court may permit an amendment or performance of such act, and subdivision 3 requiring sureties to justify if excepted to, it is within the discretion of the appellate court to permit a new undertaking to be filed, if the original is rendered ineffectual by failure of the sureties to justify after exception, where there has been no culpable fault on the part of appellant.

APPEAL from Lane: J. C. FULLERTON, Judge.

This action was instituted to recover on a promissory note calling for the sum of one thousand one hundred and seventy dollars on or before September

ninth, eighteen hundred and ninety-three, with interest at ten per cent. per annum from maturity, executed and delivered to J. D. Matlock, October twenty-second, eighteen hundred and ninety-two, by the defendants A. Wheeler, E. J. Crawford, J. N. B. Fuller, and J. C. Goodale. The complaint, after setting out the note, contains this allegation: "That said note was executed for a prior indebtedness, and, subsequent to the execution of the same, it was claimed by the defendants that a mistake had been made in the amount of said indebtedness for which said note was given, and thereupon, at the request of defendants, and with their consent and knowledge, in order to correct said mistake, an indorsement of one hundred and ninety-five dollars was placed on said note of the same date as the note, and the word 'maturity' in said note was erased, all of which defendants consented to, and ratified and confirmed." The defendants answered separately, except Crawford, who made no appearance. The answers are alike, and raise a material issue by denying "that the word 'maturity' in said note was erased with the knowledge or consent of said defendants, or any of said defendants, or that said defendants or any of them consented to or ratified or confirmed said erasure." It is then affirmatively averred that plaintiff wrongfully and fraudulently, with intent to cheat, wrong, and defraud defendants, and without their knowledge or consent, erased the word "maturity" from said note, and this being denied by the replies, the parties went to trial upon the issues thus joined. There was a judgment for plaintiff and defendants appeal.   REVERSED.

29 OR.- 5.

For appellants there were briefs ·and· oral argu-
ments by *Messrs. John M. Williams* and *Laurence
Flinn.*

For respondent there were briefs and oral argu-
ments by *Messrs. L. Bilyeu* and *A. C. Woodcock.*

Opinion by Mr. Justice Wolverton.

The plaintiff, testifying in his own behalf, gave
evidence in chief tending to show that a few days
after the execution of the note the defendant
Wheeler came to his place of business, and stated
that there was a mistake in the note; that it, was
given for too much money, and to correct it he
wanted a credit of one hundred and ninety-five dol-
lars · indorsed thereon, and to have the note draw
interest from date, and continuing, said: "He showed
me some figures by which I saw he was right. I
told Mr. Wheeler I would give the credit on the
note, and make the change as soon as I could see
the parties, if they were willing to do it, and I did
so." Further testimony was then given by him
tending to show that he subsequently saw all the
makers of the note, obtained their consent, and
made the change accordingly, by indorsing one hun-
dred and ninety-five· dollars thereon, and erasing the
word "maturity." Without having testified in chief
touching the consideration of the note, he was asked
and permitted to answer, over objection, the follow-
ing question, namely, "What was the consideration
of the one thousand one hundred and seventy-dollar
note on which you recognized the overcharge of one

hundred and ninety-five dollars, leaving the true principal nine hundred and seventy-five dollars?" Answer—"There were three notes given to Goodale and I for four thousand five hundred dollars. These notes were partly paid. * * * Some time before that, some eight months, probably, Mr. Goodale claimed to have collected something between eight hundred dollars and two thousand dollars on the notes, leaving whatever balance there would be. The balance was figured up and put into four notes; three notes for three hundred and three dollars and this note for one thousand one hundred and seventy dollars. * * * I had to commence a suit to collect my half of the money he (Goodale) had collected. In this suit there were some costs, and the note of one thousand one hundred and seventy dollars and the three three-hundred dollar notes were for the same thing, and were to balance and adjust the debt between us, with these costs. That was the consideration, and was a part of the consideration of the three notes with accruing costs." After the plaintiff had rested, A. Wheeler, one of the defendants, was called as a witness, who gave evidence tending to show that in October, eighteen hundred and ninety-two, there existed two notes executed by Wheeler, Crawford, and Fuller to Matlock and Goodale, that Crawford had paid one half of the notes, and Wheeler was to pay the remaining half. One of these notes, being for nine hundred and eight dollars and seventy-five cents, was due; and in taking it up three notes were given for three hundred and three dollars each. The other note was for one thousand five

hundred dollars, one half of which had been paid, and the balance, with three years' interest thereon, would become due in September, eighteen hundred and ninety-three. This note was to be renewed with J. C. Goodale as one of the makers, and in pursuance of the arrangement the one thousand one hundred and seventy-dollar note was executed to plaintiff, which was made to draw interest from maturity, because the interest was included in the principal sum. The witness discovered an error in his computation, and explained that "The principal was one thousand one hundred and seventy dollars, when it should have been nine hundred and seventy-five dollars, which was the amount due on the note for which it was given." He was then asked the following question: "In the settlement that led up to the giving of this note was there anything included for costs of some former litigation?" To which he replied: "Not anything. I paid them; I gave my check on the Lane County Bank for them." There appears to have been no objection made at this time to the question or answer. But the bill of exceptions, after reciting some intervening matter, shows that the witness "after having been allowed to testify as above stated, also testified as follows." The same question then appears to have been propounded, to which the same answer is given as above, and thereupon plaintiff moved that the answer be taken from the jury, which was allowed. The witness was then asked to "state to the jury what if any costs were paid?" He answered without objection: "The costs were paid by my check on the Lane County Bank."

The check was then offered in evidence, but upon objection it was excluded by the court. Subsequently E. J. Crawford was called as a witness for defendants, and was asked "what was the consideration of the one thousand one hundred and seventy-dollar note mentioned in plaintiff's third cause of action?" which question was objected to by plaintiff, and the court sustained the objection. The purpose of the question, as disclosed by the record, was to corroborate Wheeler in the main as touching his statements concerning the consideration of the note. Counsel contends that the court erred in not permitting this testimony to go to the jury, because, *first*, the testimony of Wheeler and the check offered by him were pertinent to rebut the statement of the plaintiff touching the costs of the action as entering into and forming part of the consideration of the note sued on; and, *second*, the testimony of both Wheeler and Crawford was relevant as tending to establish the defendants' case. Wheeler denied that he ever consented to the change in the note, and in support of his statement related the circumstance, from his standpoint, that a mistake was simply made to the extent of one hundred and ninety-five dollars against himself in ascertaining the amount for which the note should have been written, and that the indorsement alone would leave the amount as it was originally intended by the parties; that the interest having been calculated in advance to September ninth, eighteen hundred and ninety-three, the date upon which it was made to fall due, was added to the principal, making nine hundred and seventy-five dollars, instead of one thousand

one hundred and seventy dollars. He said in effect that a change in striking out the word "maturity" would increase the liability by the amount of the interest on the true principal intended by the parties, to wit, nine hundred and seventy-five dollars from the date of the execution of the note to the date of its maturity, and therefore, for this reason, among others, he knew he did not consent to the change.

1. We will consider first whether this testimony was relevant. The issue was whether the note had been changed by striking out the word "maturity" with the consent of the makers, or, if without their consent, whether it was afterwards ratified by them. The rule is settled "that the evidence offered must correspond with the allegations, and be relevant to acts put in controversy by the pleadings": Bradner on Evidence, 8. But where the evidence is at all material, and is relevant, it is error to exclude it: *Colglazier* v. *Colglazier*, 124 Ind. 196 (24 N. E. 95). It is said in *Olmsted* v. *Hoyt*, 11 Conn. 380, that "Evidence ought never to be adjudged irrelevant, which, according to ordinary experience, and the common observation of the motives and conduct of men, may fairly be supposed to influence and persuade candid and intelligent minds." This doctrine is approved by *Copp* v. *Hardy*, 32 Mo. App. 588. Again, in *Louisville Railroad Company* v. *Hart*, 2 Ind. App. 130, (28 N. E. 218,) it is said: "A witness may be allowed to testify to the existence of any collateral fact that may tend to enable him to

remember the principal fact, or strengthen his conviction in its truth." *Hunter* v. *Harris*, 131 Ill. 482, (22 N. E. 626,) is a case wherein the issue was as to the execution of a promissory note. The proof as to the genuineness of the signatures being about equally balanced, it was held that evidence tending to show a reason for the execution of the note, and a reasonable probability or improbability that the defendant made and delivered the same, is not only competent, but highly important for the consideration of the jury. With the case at bar there is a direct conflict between the witnesses touching the consent to and ratification by the makers of the note to the change. Now, it would seem that the fact, if it is a fact, that the nine hundred and seventy-five dollars included the interest calculated in advance to September ninth, eighteen hundred and ninty-three, the date upon which the note would fall due, would be relevant as tending to show that the makers of the note would less readily consent to the change, as it would increase their obligation. It is, at least, a circumstance surrounding the transaction, which ought to go to the jury for what it is worth. The reason for the doing or not doing of a thing, if patent, is usually indicative of the ultimate act of a rational being. So that a reason which is calculated to affect the actions of individuals is pertinent in determining whether or not they have acted at all. We think the testimony of both Wheeler and Matlock touching the consideration which formed the basis of the note in question was relevant to establish defendants' case, and the court was in error

in not permitting the witness Crawford to testify thereto in corroboration of Wheeler. Now, as touching the check which was offered and rejected. The defendants were not entitled to the testimony of plaintiff relating to the consideration of the note, while on the stand as a witness in his own behalf, as he had made no allusion to it in his examination in chief. The orderly way for defendants to have proceeded would have been for them to have offered their evidence upon this subject, then, if in rebuttal the plaintiff had testified that the costs constituted a part of such consideration, the defendants might in surrebuttal have testified as to the payment of these costs, and the check would then have become competent in corroboration.

2. It is next contended that the court erred in giving to the jury instruction number eight which is as follows: "(8). Or if you find from the evidence that at any time prior to the trial of this action the attention of the defendants, or any of them, was especially called to 'the alteration in the note, and they were told what the plaintiff had done in the matter of said alteration, and they did not object thereto, or stated that it was all right, or words to that effect, such words would amount to a ratification of the act of the plaintiff, and such defendant cannot now be heard to dispute the note as altered, and your verdict should be for the plaintiff." The objection made to this instruction is that it is susceptible of being construed into a declaration by the court that if the attention of any of the defendants,

whether one or more, less than all, had been called
to the alteration, and he or they had not objected
thereto, that those not so notified would be held to
have ratified the change as well. Standing alone
the instruction is possibly susceptible of the con-
struction suggested, but it must be read in connec-
tion with other instructions pertaining to consent
and ratification. Numbers seven and eleven are the
most pertinent and we quote such portions as are
relevant: "(7). If you find from the evidence that
at the time the alteration in the note was made
the defendants, or any of them, was notified of the
purpose of the plaintiff to make the alteration,
* * * and they agreed to the change, or any of
them, the defendants who consented to such change,"
are bound, etc. And "(11). If you find from all
the evidence that one or more of the defendants as-
sented to the change, or ratified the act of the
plaintiff in making the same, then the plaintiff can
recover the whole of the amount due upon the note
from such defendant, or defendants, and if you find
from the evidence that any of the defendants did
not assent to the change or ratify the same, then
you cannot find against such defendants." When
read *in pari materia* with these, we think instruction
number eight is not subject to the objection sug-
gested.

3.  It is further claimed that the instruction does
not correctly state the law as to ratification, that a
mere failure to disavow the acts of an unauthorized
agent or a volunteer, when brought to the knowledge
of the principal, does not amount to ratification; but

the instruction contemplates a case where the attention of the principal has been especially called to the change. In such a case we think he ought to disavow at once, or at least within a reasonable time, or he will be held to have ratified the transaction: *Ward* v. *Williams*, 26 Ill. 447 (79 Am. Dec. 385, and note found at pages 387 to 389). There was no error in giving the instruction, but for error of the court in rejecting the evidence of Crawford, the judgment will be reversed, and the cause remanded for a new trial.        Reversed.

On Motion to Dismiss Appeal.
[40 Pac. 5.]

Per Curiam. 4. The respondent moves to dismiss this appeal because the surety on the undertaking, after exceptions to his sufficiency had been filed, was not produced for justification as required by law. Before the time fixed for hearing the motion to dismiss, the appellants served and filed in this court a motion for leave to give a new and sufficient undertaking, which was brought on for hearing with the motion to dismiss. That the appeal was taken in good faith and the omission of the appellants to produce the surety for justification was the result of inadvertence and mistake on the part of their counsel is not questioned, but respondent contends that the failure to do so of itself operated as an abandonment of the appeal, and it is therefore within the power of this court under subdivision 4 of section 537, Hill's Code, which provides for exceptions to and justification of sureties on ap-

peal, to allow a new undertaking to be filed at this time.  That subdivision provides that "when a party in good faith gives due notice of appeal, and thereafter omits, through mistake, to do any other act * * * provided in this section necessary to perfect the appeal (which of course includes the failure to have the sureties justify) * * * the court or judge thereof, or the appellate court, may permit an amendment or performance of such act on such terms as may be just," and, in our opinion, clearly authorizes this court to permit a new undertaking to be filed when the original is rendered ineffectual by the failure of the sureties to justify after exception, where there has been no culpable fault on the part of the appellant.  It was to prevent the failure of an appeal which had been taken and is being prosecuted in good faith that the statute was enacted, and to this end it should receive a liberal construction.  The courts are always reluctant to permit an appeal to fail when it can be avoided without violating some positive provision of law or well settled rule of practice.  The failure of an appellant to produce his sureties for justification may render the undertaking of no effect, but it does not necessarily avoid the appeal, or show such negligence as ought to be visited with the consequences of a dismissal and denial of the right to be heard in this court when he shows a reasonable excuse for his failure, and is willing to file a new and sufficient undertaking.  The motion to dismiss will therefore be overruled, and the undertaking submitted may be filed.          MOTION OVERRULED.