Argued on the merits July 6, affirmed July 21, 1914.

## CHAMBERS *v.* EVERDING & FARRELL.

(136 Pac. 885; 143 Pac. 616.)

**Appeal and Error—Proceedings to Transfer Cause—Undertaking.**

1.    Under Section 550, subdivisions 2-4, L. O. L., requiring an undertaking on appeal, and, on exception, the justification of sureties, and providing that when a party in good faith gives notice of appeal and thereafter omits, through mistake, to do any other act (including the filing of an undertaking), the court may permit performance on such terms as may be just, the trial court may, with or without hearing, permit appellant to substitute a new undertaking when the sureties

on the original, after exception, fail to justify, provided no bad faith can be charged against appellant.

**Appeal and Error—Proceedings to Transfer Cause—Undertaking.**

2. Permitting an appellant to substitute a new bond when the sureties on the original bond fail to justify does not infringe respondent's right to except to the sufficiency of the new bond.

**Master and Servant—Injuries to Servant—Duty of Master.**

3. A servant is not entitled to recover from his employers damages for injuries, unless they were guilty of negligence and this negligence was the proximate cause of his injuries.

**Negligence—Elements—"Actionable Negligence."** .

4. To give a cause of action for negligence, there must be a legal duty to use care, a breach of the duty, and damage to the plaintiff, and the damage must be the effect of the breach of legal duty.

**Master and Servant—Injury to Servant—Place to Work.**

5. It is the duty of an employer to use reasonable care to provide a reasonably safe place for his employees to work.

**Master and Servant—Injuries to Servant—Action—Evidence.**

6. In an action for injuries to a servant, evidence *held* to show that timber cut on a hillside and kept in position by props was left in a reasonably safe position, except for the effect of the fire which destroyed the props.

**Master and Servant—Injury to Servant—Proximate Cause.**

7. Where fire from the opposite side of a hill on which plaintiff was working destroyed props holding timber in position on the hillside, and permitted logs to roll down and injure plaintiff, the fire, and not the cutting of the timber, was the proximate cause of plaintiff's injury.

**Damages—"Proximate Damage."**

8. Proximate damages are such as are the ordinary and natural result of the omission or negligence complained of, and are usual and might have been reasonably expected to occur.

[As to proximate and remote causes, see note in 36 Am. St. Rep. 807. As to respective functions of court and jury on question of proximate cause, see note in Ann. Cas. 1913B, 351.]

**Damages—Elements of Compensation—"Remote Damages."**

9. "Remote damages" are such as are the unusual and unexpected result, not reasonably to be anticipated from an unusual or accidental combination of circumstances, or a result over which the negligent party has no control.

From Multnomah: GEORGE N. DAVIS, Judge.

This is an action by George Chambers against the Everding & Farrell Company, a corporation, the C. C. Masten Logging Company, a corporation, C. C.

Masten and T. G. Farrell to recover damages for personal injuries. From a judgment for defendants, plaintiff appeals. Respondents file motion to dismiss appeal.                                    DISALLOWED.

*Mr. C. A. Bell* and *Mr. Charles W. Fulton,* for the motion.

*Mr. Arthur I. Moulton, contra.*

Department 2.    MR. JUSTICE McNARY delivered the opinion of the court.

This is a motion to dismiss an appeal for alleged nonconformity with certain rules of practice and statutory requirements in respect to the filing of an undertaking.  On July 8, 1913, appellant served upon respondents an undertaking on appeal.  Four days later, respondents filed exceptions to the sufficiency of the sureties on the undertaking.  On the same day, the court made an order setting July 20th as the time in which the sureties should appear and justify.  On the 18th day of the month, appellant filed with the clerk and served upon respondents a motion for an order permitting substitution of a new undertaking with the American Surety Company as surety, together with a copy of the undertaking.  Supporting the motion was an affidavit of appellant to the effect that the sureties on the original undertaking were residents of an adjoining county engaged in the duties of their employment and for that reason refused to appear before the court and submit to an examination touching their qualifications as sureties; that great diligence had been exercised to procure the attendance of the sureties; and that no means were available to coerce the sureties to present themselves for examination.  The day following, the court upon an *ex parte* hearing entered an

order permitting appellant to file the substitute undertaking.

1. Respondents' counsel urged with much zest that appellant has quite disregarded the provisions of Section 550, subdivisions 2 and 3, L. O. L.:

"Within ten days from the giving of notice or service of notice of the appeal, the appellant shall cause to be served on the adverse party or his attorney an undertaking as hereinafter provided, and within said ten days shall file the original of said undertaking, with proof of service indorsed thereon, with said clerk. Within five days after service of said undertaking, the adverse party or his attorney shall except to the sufficiency of the sureties in the undertaking, or he shall be deemed to have waived his right thereto.

"The qualifications of sureties in the undertaking on appeal shall be the same as in bail on arrest, and, if excepted to, they shall justify in like manner."

Counsel for appellant suggest a consideration of Section 550, subdivision 4, L. O. L.: " * * When a party in good faith gives due notice as hereinabove provided of an appeal from a judgment, order, or decree, and thereafter omits, through mistake, to do any other act (including the filing of an undertaking as provided in this section) necessary to perfect the appeal or to stay proceedings, the court or judge thereof, or the appellate court, may permit an amendment or performance of such act on such terms as may be just." Giving equal effect to the three subdivisions compels us to announce the rule, that, upon a proper showing, the trial court may, with or without a hearing from either side, permit a party appellant to substitute a new undertaking when the original is rendered nugatory by the failure or refusal of the sureties to justify, after exception by respondent, provided no bad faith or misconduct can be charged against appellant.

This liberal doctrine is entrenched in the jurisprudence of this state by force of *Matlock* v. *Wheeler,* 29 Or. 64 (40 Pac. 5, 43 Pac. 867); *Newberg Orchard Assn.* v. *Osborn,* 39 Or. 370 (65 Pac. 81).

2. The enforcement of this legal precept does not infringe upon the right of a respondent to except to the sufficiency of a subsequent undertaking, as that is a statutory right that cannot be abridged or withheld and is open to respondent any time within five days after the service of the substitute undertaking. In the case under consideration, the Circuit Court did not attempt to curtail respondents' right to except to the sufficiency of the new undertaking, but did make simply an order granting appellant permission to file a new bond on account of the circumstances detailed in appellant's affidavit. In the case of *Simison* v. *Simison,* 9 Or. 335, which counsel for respondents cite, this court held that a party appellant did not possess an inherent right to file a new undertaking in the absence of an order of the Circuit Court permitting the same. The rule there enunciated in no way runs counter to the law of this case, as appellant herein obtained the order from the court, the lack of which was the pitfall in the Simison case. Respondents failed to attack the sufficiency of the substitute undertaking, nor were they deprived of an opportunity thereof, and for that reason cannot now be heard to question the regularity of this appeal merely because appellant obtained an order of the lower court granting permission to file the second undertaking, without a hearing being offered counsel for respondents.

Motion to dismiss is disallowed.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.

Affirmed July 21, 1914.

ON THE MERITS.

(143 Pac. 616.)

This is a personal injury action by George Chambers against the Everding & Farrell Company, a corporation, and others, in which judgment was rendered in favor of defendants, and plaintiff appeals. The facts appear in the opinion of the court.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Arthur I. Moulton* and *Mr. Thomas J. Cleeton,* with an oral argument by *Mr. Moulton.*

For respondents there was a brief over the names of *Mr. Charles W. Fulton, Messrs. Reed & Bell* and *Mr. Elmer E. Coovert,* with oral arguments by *Mr. C. A. Bell* and *Mr. Fulton.*

Department 1.    MR. JUSTICE RAMSEY delivered the opinion of the court.

This action was commenced in 1912, to recover $35,000 for personal injuries received by the plaintiff, on the 23d day of August, 1910, while in the employ of some of the defendants in Columbia County. The pleadings are lengthy, and, as no questions arise as to their sufficiency, it is unnecessary to summarize them. The action is based on the alleged negligence of the defendants.

When the evidence in chief of the plaintiff was in, the defendants filed separate motions for a judgment of nonsuit, for the reason that there was not sufficient evidence to be submitted to the jury, and for the further reason that the injury complained of was the

result of an unavoidable accident, etc. After argument, the trial court, on the 27th day of January, 1913, sustained said motions and granted a judgment of nonsuit in favor of all of the defendants. The court below held that the injury to the plaintiff was an accident for which none of the defendants were liable.

The evidence for the plaintiff shows that some of the defendants were engaged in the logging business near Warren, in Columbia County, and owned timber land there, upon which they were operating. They had been operating there for some time prior to August 23, 1910. They had about 12 miles of railroad for logging purposes, and they used a donkey-engine in conducting their operations. This donkey-engine was located near their railroad, at the foot of a hill. This hill was steep; some witnesses saying that the ascent was from 25 to 45 degrees. The side of the hill was covered with underbrush and some vine maples.

There had been a good growth of fir timber on this hillside. Some of the defendants had, in carrying on their logging operations, felled this timber and cut the trees into saw logs, about 40 feet in length. These logs had been cut about a month prior to August 23, 1910. The limbs and tops of the trees were there among the logs, and the summer weather had dried them.

The witnesses for the plaintiff differ in their opinions as to the distance from the donkey-engine, at the base of the hill, to the nearest point where the said logs were lying on the hillside. But the logs were from 15 to 150 feet distant from the engine, and a person standing at or near the engine could not see the logs, as the underbrush and vine maples covered

the ground and prevented seeing them. Mr. Samuel Owens, a witness for the plaintiff, who had passed by the logs on the hillside, says that the logs, or some of them, "were propped up" with pieces of wood from 4 to 5 inches thick. He says that he believes that a person standing at the engine could not see the logs, although he thinks that some of the logs were only about 15 feet distant from the engine. R. L. Welch testified that the logs on the hillside had been cut about a month, and that stakes had been driven below the logs as props, to keep them from rolling down the hill. R. K. Young testified that the hill was steep, and some of the logs had props to prevent their rolling down the hill. He noticed that each log that he saw had one prop to keep it from rolling· down. Frank Nagle testified that it was the burning of the props that caused the logs to roll down the hill.

The evidence for the plaintiff tends to prove that, when these logs were cut, about a month before the accident, the persons who sawed the logs, in order to prevent their rolling down the hill, drove in the ground next to the logs, on the lower side thereof, "props" from 3 to 5 inches in diameter, and that the fire burned these "props," and that it was the burning of these "props" that caused the logs to roll down the hill.

The plaintiff was working at the rollway on the railroad trestle, about 100 feet from the donkey-engine, where he had been working for several days. A man named Thomas told him that there was a fire in the woods on the hill not far distant, and that Foreman Linville said that the men should quit work and go to fighting fire. The plaintiff went to the donkey-engine, and Foreman Linville was there at that time, and he told the plaintiff to assist the engineer, Brown, at

the engine, and to put water on the brush around the engine. Brown was there holding the hose. The plaintiff then asked Brown whether he should assist him with the hose, and Brown assented, and he took hold of the hose, and they wet the brush about the engine. The plaintiff, after being there a while, went away some distance to get his dinner pail. He did this without any orders, and then some logs rolled down the hill at some distance away. These logs were on fire and rolled against the railroad. The plaintiff then, without further orders, went back to the engine, where Engineer Brown was, and had just taken hold of the hose again, when some one shouted: "Look out for the logs!" The plaintiff immediately turned to run toward the railroad track (about 40 feet distant), and Brown also ran and escaped injury; but the plaintiff fell just as he reached the railroad track, and the log that came down the hill caught one of his ankles between the log and the end of a railroad tie, and crushed it. The plaintiff was taken to a hospital in Portland, and remained there six months. His leg was amputated, and he is permanently crippled. He ran a butcher-shop after he left the hospital, but the injury that he suffered was a very serious one.

After the plaintiff had returned to the engine, as stated *supra,* and before the log that injured him rolled down the hill, Superintendent Rieger was at the engine. Rieger shouted to the men to "get pails and go to fighting the fire," but gave no more definite directions than that. Some got pails, but there were not pails enough for each man to have one. The plaintiff did not get a pail, but stayed with Brown at the engine. Referring to the orders of Rieger, on page 87 of the evidence, in answer to the question:

"Q. But he didn't say anything about you going up there, and using the hose, did he? He said keep the fire away from the donkey—keep the fire away from the railroad, and keep it away from the donkey—and you, in the exercise of your best judgment, under these circumstances, thought that the best thing for you to do was to go up there?"

A. Yes, sir.

"Q. So you were acting on the exercise of your best judgment under the circumstances?

"A. Yes, sir."

No orders were given the plaintiff, except those stated *supra,* and he exercised his own judgment as to what he should do under the circumstances. He had had experience in the logging business.

The evidence fails to show who was responsible for the starting of the fire; but it is not claimed that either of the defendants was to any extent responsible therefor. It came from the other side of the hill. The land and timber upon which the defendants were operating were the property of the defendant the C. C. Masten Logging Company. Owing to a wind that prevailed, the fire was very hot and did damage to the property and equipment of the defendant's company that owned the property. The fire was blown by the wind on to the defendant's land, and it burned the "props" that had been placed against the logs to prevent their rolling down the hill.

We have stated the material facts pertaining to the accident that occurred to the plaintiff. The court below held that there was not sufficient evidence to show that either of the defendants was guilty of negligence to be submitted to the jury, and the question for determination on this appeal is whether that decision was right. That the plaintiff was very seriously injured was clearly established by the evidence; but

the material question for decision is: Was his injury the proximate result of any negligence of the defendants, or of either of them?

It is clear from the evidence that he was injured by the log that rolled down the hill and crushed his ankle, or the lower part of his leg, and that the log was caused to roll down the hill by the fire's burning away the "props," or whatever held it in place prior to the fire. The evidence shows that it had been cut and lying there on the hillside a month or longer. The fact that the log remained in place for a month or longer, and until the fire burned away its props, is evidence that the props were sufficient to hold it on the hillside, until it was caused to roll down the hill by the agency of the fire.

Witnesses for the plaintiff say that, when the logs were cut, small "props" were driven in the ground on the lower sides thereof, to prevent their rolling down the hill, and that the fire burned these props, and that, when the props were burned away, the logs rolled down. We think that it is certain that the props were sufficient to prevent the logs rolling down the hill until the fire burned the props away.

3. The plaintiff is not entitled to recover from the defendants damages for injuries, unless they were guilty of negligence, and this negligence was the proximate cause of his injuries.

4. In Shearman & Redfield, Negligence (6 ed.), Section 3, negligence is defined thus:

"Negligence, constituting a cause of civil action, is such an omission, by a responsible person, to use that degree of care, diligence, and skill, which it was his legal duty to use for the protection of another person from injury, as, in a natural and continuous sequence, causes unintended damage to the latter."

The same authors, in Section 5 of the same volume, say:

"A cause of action upon negligence should be thus analyzed. Negligence in the defendant and damage to the plaintiff must concur. Negligence consists in: (1) A legal duty to use care; (2) a breach of that duty; (3) the absence of a distinct intention to produce the precise damage, if any, which actually follows. With this negligence, in order to sustain a civil action, there must concur: (1) Damage to the plaintiff; (2) a natural and continuous sequence, uninterruptedly connecting the breach of duty with the damage, as cause and effect."

There must be a legal duty to use care, and a breach of this duty, and damage to the plaintiff, and the damage must be the effect of the breach of the legal duty, in order that the plaintiff may have a cause of action, based thereon. In his Commentaries on Negligence, Volume 1, Section 3, Mr. Thompson says:

"An essential ingredient in any conception of negligence is that it involves *the violation of a legal duty* which one person owes to another—*the duty to take care* for the safety of the person and property of the other."

In the *Nitroglycerine Case,* 82 U. S. (15 Wall.) 537 (21 L. Ed. 206), the court says:

"This action is not brought upon the covenants of the lease; it is in trespass for injuries to the buildings of the plaintiff, and the gist of the action is the negligence of the defendants; *unless that be established, they are not liable.* The mere fact that injury has been caused is not sufficient to hold them. No one is responsible for injuries resulting from unavoidable accident, whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or by his omission, *has violated some duty incumbent upon him, which has caused the injury complained of.*"

In *Bingham* v. *Carolina Central R. R.,* 130 N. C. 626 (41 S. E. 808), the court says:

"Pure accidents cannot be eliminated by law. All that the law has done is to say that the employer shall exercise reasonable care by himself and servants, to prevent accidents, and the courts can hold him responsible *only when he fails to exercise such care.* The employer is not responsible for an accident simply because it happens, but only when he has caused it directly or indirectly by some negligent act or omission of legal duty."

5. It is the duty of the employer to use reasonable care to provide a reasonably safe place for his employees to work: *Kopacin* v. *Crown-Columbia P. & P. Co.,* 62 Or. 294 (125 Pac. 281); *Millen* v. *Pacific Bridge Co.,* 51 Or. 548 (95 Pac. 196); *Woods* v. *Wikstrom,* 67 Or. 581 (135 Pac. 192).

6. The place where the plaintiff worked was reasonably safe, until the fire was blown upon the logs of the defendants. The defendants had a right to fell the trees on the side of the hill on their own premises, and cut them into sawlogs, and to prop them, as the evidence shows that they did, to prevent their rolling down the hill. The evidence for the plaintiff shows that these logs had lain on the hillside for a month or longer, and that they were propped to prevent their rolling down the hill, and that their rolling down the hill was caused by the fire's burning away the props that held them in place. The fact that the logs had lain there for a month shows that the props were sufficient to hold them there until they were burned away. The evidence shows that these props were from 3 to 5 inches thick. A small prop is sufficient to prevent a log's rolling under the circumstances shown by the evidence. At any rate, the evidence

shows that the logs remained in place until the fire burned away the props. The fire was the agency that caused the logs to roll down the hill, and do the injury. The cutting of the logs, as the evidence shows they were cut, and propping them to prevent their rolling down the hill, were lawful acts, and no damage would have resulted to the plaintiff, if it had not been for the intervention of the fire, which burned the props and limbs that held the logs in place.

7, 8. In order that the plaintiff should have a right of action, it was incumbent on him to show, *prima facie*, that the defendants, or some of them, were guilty of negligence, and that this negligence was the proximate cause of the injury. In *Brown* v. *Oregon-Washington R. & N. Co.*, 63 Or. 403 (128 Pac. 40), referring to "proximate cause," the court says:

"Proximate cause is such cause as would probably lead to injury and which has been shown to have led to it. It need not appear from the evidence that the injuries complained of resulted instantly and immediately from the negligence. The law regards the one as the proximate cause of the other, without regard to the lapse of time, *where no other cause intervenes or comes between the negligence charged and the injuries received to contribute to it. There must be nothing to break the causal connection between the alleged negligence and the injuries.*"

In *Washington* v. *Baltimore etc. R. Co.*, 17 W. Va. 196, the court says:

"The act or omission, which constitutes negligence, must be such as directly produces as its natural consequence an injury to another. And therefore if a party do an act, which might naturally produce an injury to another as its consequence, but, before any such injury results, *a third person does some act or omits to perform some act, * * and this act or omission of such third person is an immediate cause of an injury, which*

*would not have occurred but for his negligence, such third person is responsible for such injury and not the party guilty of the first negligence;* for the causal connection between the first act of negligence and the injury *is broken by the interposition of the act or omission of the third party.*"

In *Claypool* v. *Wigmore,* 34 Ind. App. 40 (71 N. E. 510), the court says:

"We think the proximate cause which leads to a result must be regarded and understood to be that which, in a natural and continuous sequence, *unbroken by any new or other cause, produces the result.* If it be conceded that the facts show that appellant was negligent in the first instance, they in like manner show, and it is so conceded, that appellee's injury would not have resulted from such negligence, but was the direct and proximate result of the negligent act of an independent, responsible, and intervening agency. In such case it has many times been ruled that the party guilty of negligence in the first instance is not liable.    This doctrine is firmly established by numerous authorities."

In *Stone* v. *Boston & A. R. Co.,* 171 Mass. 536 (51 N. E. 1, 41 L. R. A. 794), the facts were that the defendant's railway depot, freight-house, and a platform used mostly for storing oil, were situated across the street from plaintiff's buildings.  The platform had become  thoroughly saturated with oil, leaking from the barrels. · A teamster, not connected with the defendant, brought goods to be shipped by it, and, in lighting his pipe, threw a match on the ground underneath the platform, which immediately caught fire, and with it the oil standing on the platform, destroying the plaintiff's buildings, as well as those of the defendant.  The plaintiff's buildings would probably not have been burned if there had been no oil on the

platform. The court in that case held that the fire's resulting from leaving the oil on the platform could not be apprehended by the defendant, and its acts not being the proximate cause of the fire, the plaintiff could not recover. The proximate cause of the injury in that case was the throwing of the lighted match upon the oily premises by the teamster.

In *Behling* v. *Pipe Line,* 160 Pa. 359 (28 Atl. 777, 40 Am. St. Rep. 724), the syllabus is:

: "A proximate cause is one which in actual sequence undisturbed by an independent cause, produces the result complained of. A pipe-line company is not liable for the burning of a house, where it appears that the burning oil from a neighboring property flowed down upon the pipe-line, causing it to burst and throw a spray of burning oil upon the house. In such a case the pipe-line is not the proximate cause of the injury."

In this case the proximate cause of the injuries to the plaintiff was the fire that burned away the props that had held the logs in place and prevented their rolling down the hill. If the fire had not burned out the props, the logs would not have rolled down the hill, and the plaintiff would not have been hurt. Cutting the logs and propping them, as the evidence shows that they were cut and propped, was a lawful act, and it was done with reasonable care. Those who did it violated no duty that they owed to the plaintiff, and hence they were not guilty of negligence. If they had been guilty of negligence in cutting the logs and leaving them on the hillside, they would not have been liable to the plaintiff for the injury that he received, because that act was not the proximate cause of the injury. The fire was the proximate cause of the in-

jury, and the defendants were not responsible for the fire's being there, or for what it did.

If the defendants had been guilty of negligence in leaving the logs propped on the hillside, they would not have been liable to the plaintiff for the injury to him, because they could not have foreseen or reasonably have anticipated that someone would put out the fire, and that the fire would be blown by the wind upon their premises, and burn out the props, and cause the logs to roll down the hill and injure some person. Their negligence under such a condition of facts would have been too remote to be actionable. In *Cole* v. *German S. & L. Society,* 124 Fed. 115 (59 C. C. A. 595, 63 L. R. A. 416), the court says:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable. Such an act is either the remote cause, or no cause whatever, of the injury. An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the *remote,* and the independent intervening cause is the *proximate* cause of the injury."

In *Braun* v. *Craven,* 175 Ill. 405 (51 N. E. 659, 42 L. R. A. 199), the court says:

"The principle is: Damages which are recoverable for negligence must be such as are the natural and reasonable results of the defendant's acts, and the consequences must be such as in the ordinary course

of things, would flow from the acts and could be reasonably anticipated as a result thereof.''

In *Cleveland, C., C. & St. L. R. Co.* v. *Lindsay,* 109 Ill. App. 533, the syllabus is:

''The breach of duty upon which an action for an injury can be maintained must be the proximate cause of the damages to the plaintiff.

''The proximate cause of an event is that which, in the natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which that event would not have occurred.

''Every defendant shall be held liable for all of those consequences which might have been seen and expected as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration.''

In *Milwaukee etc. R. Co.* v. *Kellogg,* 94 U. S. 475 (24 L. Ed. 256), the court says:

''But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.''

In Volume 1 of Thompson's Commentaries on Negligence, Section 57, the author says:

''The foregoing statement of doctrine is always subject to the further proviso *that the circumstances were such that the injurious result which did happen might have been foreseen as likely to result from the first wrongful act or omission.''*

29 Cyc. 528, says:

''When the act and the injury are not known by common experience to be naturally and usually in sequence, and the injury does not, according to the ordinary course of events, follow from the act, they are

not sufficiently connected to make the act the proximate cause. And the same is true when the injury is due to some unlooked-for and unexpected event, which could not reasonably have been anticipated or regarded as likely to occur.''

In *Hartvig* v. *N. P. L. Co.,* 19 Or. 525 (25 Pac. 359), the court says:

"The principle is well settled that a wrongdoer is liable for the injury which resulted as the natural and probable consequence of his wrongful *act of which he ought to have foreseen in the light of surrounding circumstances.*"

The rule is thoroughly established by the authorities that proximate damages are such as are the ordinary and natural results of the omission or negligence complained of, and are usual and might have been reasonably expected to occur.

9. Remote damages are such as are the unusual and unexpected result, not reasonably to be anticipated from an accidental or unusual combination of circumstances—a result beyond and over which the negligent party has no control. The law regards as actionable only the direct and proximate results of negligent acts. In this case we hold that the proximate cause of the injury to the plaintiff was the burning of the props that held the logs in place and prevented their rolling down the hill, and that the persons who cut the logs and propped them to prevent their rolling down the hill were not guilty of negligence or the want of reasonable care.

The evidence shows that the defendants were not guilty of negligence at the time that the accident occurred. While some directions were given to the plaintiff, he admits in his evidence that he acted on his own judgment under the circumstances. We approve the

decision of the trial court in granting the judgment of nonsuit.

We have not considered the question as to which of the defendants would have been liable, if there had been actionable negligence on the part of either of them.

The judgment of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.