FRANK ARKO v. SHENANGO FURNACE COMPANY and Another.[1]

February 26, 1909.

Nos. 15,961—(258).

**Master and Servant.**

The plaintiff was injured while trying to stop a loaded ore car on a gravity track in the defendant's mine. The evidence was sufficient to sustain a finding that the defendant was negligent in not warning and instructing the plaintiff as to his duties and the dangers incident thereto, and that he was not guilty of contributory negligence. The court did not err in its instructions to the jury.

Action in the district court for St. Louis county against the Shenango Furnace Company and the Duluth, Missabe & Northern Railway Company to recover $25,712 damages for personal injuries received while plaintiff was in the employ of the defendant Furnace Company

1 Reported in 119 N. W. 789.

and engaged in assisting in the loading of ore cars belonging to the defendant railway company. The facts are stated in the opinion. The case was tried before Dibell, J., who directed a verdict in favor of the defendant railway company. The jury returned a verdict against the defendant furnace company for $6,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant furnace company appealed. Affirmed.

*Washburn, Bailey & Mitchell* and *E. C. Kennedy*, for appellant.

*Alexander Marshall* and *Theo. Hollister*, for respondent.

START, C. J.

On August 13, 1906, the plaintiff was working for the defendant in its iron mine, and was injured while trying to stop a loaded ore car which could not be controlled by the brake, on account of its defective condition, by the use of a pinch bar. He brought this action in the district court of the county of St. Louis to recover damages sustained by reason of his injuries on the ground of the alleged negligence of the defendant in failing to warn or instruct him as to his duties and the dangers incident thereto. He recovered a verdict for $6,000. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The evidence, taking the most favorable view permissible for the plaintiff, as the jury had the right to do, tended to show the facts following:

The plaintiff is a common laborer, thirty two years old. He came to this country some nine years ago from Austria, where he was engaged in farming, but since coming here he has worked in and about iron mines. He never worked as a brakeman, and never had anything to do with railway cars or tracks. After entering the employ of the defendant, he worked twenty days around a steam shovel, and then was directed by the surface boss at the mine, Dahl, who looked after, hired, and discharged the men on the surface, to go to work at the pocket where railroad cars were loaded with ore, and that John Zemlak, the pocket man or lander, would tell him what to do. Dahl cautioned him about the danger of the cars running away, and the damage they would do to the defendant's property if they did, and that he must watch the cars, and not let them run away. The plaintiff

went to work at the pocket as directed. The cars to be loaded were placed upon the track that ran by the ore pocket upon a grade, so that, after a car was loaded and started, it would run by gravity down to the place where the loaded train was made up. When a car got opposite a pocket, it was stopped by a block put under the front truck to hold it until it was loaded. Then the block would be removed and the car started by using a pinch bar, an iron bar four and one half feet long, one end of which would be placed between the rail and a rear wheel and the car "pinched" ahead. A loaded car weighed some sixty thousand pounds, and, once started, it would, if not controlled, rush down the grade with destructive force. The method of controlling the movements of a car, when once started, was by the use of a brake by a man standing on the car. The plaintiff was never instructed as to the proper manner of using the pinch bar, or the danger of trying to stop a moving loaded car by trying to pinch it in front. Prior to the accident, the plaintiff had seen Zemlak stop or control the movement of empty cars by putting the pinch bar between the track and the front wheel. At the time of the accident, which occurred about ten o'clock at night, a car had been loaded, the plaintiff was on the ground, holding the pinch bar, his partner, Zemlak, was on the top of the car, and called to him to look and see if the brake was all right, but, before he could examine or answer, the timekeeper, who was standing by, spoke, and said that the brake was all right. Thereupon Zemlak directed the plaintiff to pinch the car away; that is, start it. He then went behind the car, after removing the block from the front, and pinched the car to give it a start. When the car had gone downgrade a few feet, Zemlak who was on top of it managing the brake discovered that he could not control the car with it and called to the plaintiff: "Frank, stop the car quick—brake no good." The plaintiff jumped from behind to the front wheel of the rear truck, and placed the pinch bar between the flange of the wheel and the rail. When the wheel struck the end of the pinch bar, it threw him under the car, and his right leg was thereby so mangled that it was necessary to amputate it.

The reason given by the plaintiff why he did not use the block, instead of the bar, is this: "Q. When you went around to get in front of this wheel, you were just about where the block was? A. The

block is far in front of the car.  Q. How far ahead of you was the block?  A. Well, so far as was the car running.  Q. The car had gone ahead some?  A. Well, go three or four feet, or five feet maybe, but I don't—that time the block, I know the block is front.  I don't can catch—  Q. Why didn't you get the block and put under that?  A. I thought the pinch bar all right for that.  Q. Why didn't you get the block?  A. Before I get the block, the car was running away, and partner was there on the car.  Maybe he be killed.  Q. Didn't you know the block would stop the car better than the pinch bar?  A. Well, block be all right.  If nothing block car get away, and—"

The contention of the defendant, briefly stated, is that the evidence was wholly insufficient to support the verdict, because, if there was an emergency which would justify the plaintiff in using the pinch bar in the manner he did, the emergency was created by himself by not examining the brake as he was directed, instead of relying upon the statement of the timekeeper; that the defendant could not have reasonably anticipated an emergency in which the plaintiff could possibly make use of the pinch bar to stop the car, or that the plaintiff was so ignorant as not to know how to use a pinch bar; and, further, that this case is clearly one of an improper use by a servant of a proper instrumentality furnished by the employer.  The evidence is clear that the plaintiff did not create the emergency by not examining the brake, for, after the timekeeper had announced that the brake was all right, Zemlak, from whom the plaintiff was to receive orders, directed him to start the car, and he promptly obeyed.

The serious question in this case is whether the defendant in the exercise of ordinary care ought to have anticipated that injury was liable to result from the use of the pinch bar by an inexperienced and uninstructed employee in starting and stopping heavy ore cars on a gravity track.  If, in view of the facts which the evidence tends to prove, the defendant ought to have so anticipated, it was its duty to have warned and instructed the plaintiff as to his duties and the dangers incident thereto, although it could not have anticipated the particular injury that did happen.  Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640.

Upon a consideration of the whole evidence we are of the opinion that the question of the defendant's negligence and the contributory

negligence of the plaintiff were questions of fact, and that the verdict is sustained by the evidence. Granrus v. Croxton Mining Co., 102 Minn. 325, 113 N. W. 693; Gussart v. Stone Co., 134 Wis. 418, 114 N. W. 799.

The defendant urges a number of alleged errors of the trial court in instructing the jury, and refusing requested instructions. The requests were properly refused for the reason that they were either not correct or misleading in view of the evidence. There was no reversible error in the instructions given, considered as a whole.

This action was also brought against the Duluth, Missabe & Northern Railway Company, the owner of the car, and at the close of the evidence the court instructed the jury to return a verdict for the defendant. The defendant assigns as error the giving of the instruction. It does not appear that the railway company was made a party to the motion for a new trial or to this appeal. It is entitled to be heard before a new trial can, in any event, be granted as to it. But, this aside, it does not appear from the record that the instruction was wrong.

Order affirmed.