Argued February 9, reargued July 2, 1962, reargued
February 6, affirmed March 13, 1963

## DEWEY *v.* A. F. KLAVENESS & CO.
379 P. 2d 560

*John G. Holden* and *Erskine B. Wood,* Portland,
argued and reargued the cause for appellant. With

them on the briefs were Wood, Wood, Tatum, Mosser & Brooke, Portland.

Donald Atchison, Portland, argued the cause for respondent, and reargued on July 2, 1962; Philip A. Levin, Portland, reargued the cause on February 6, 1963. With Levin on the briefs were Pozzi, Levin & Wilson, Portland.

James H. Clarke and William M. Dale, Jr., Portland, each filed a brief as amicus curiae.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

SLOAN, J.

Plaintiff, a longshoreman, was injured while working aboard the vessel Bougainville. He brought this action against the owner of the vessel. The case was tried to a jury. However, both parties moved for a directed verdict. The court dismissed the jury and entered findings and judgment in favor of plaintiff. Defendant appeals.

The appeal has been argued three times. The last argument was based on the questions discussed in the concurring opinion filed herewith. As there indicated, the court has also had the advantage of well prepared briefs of amici curiae. It requires no ultra-sensory perception to know that this case has been the subject of more than a considerable amount of discussion within this court.

We have taken the statement of facts as they were tersely stated in appellant's brief:

"Plaintiff is a longshoreman. Defendant is the owner and operator of the motor vessel BOUGAIN-

VILLE. On January 17, 1960, the ship was docked in Portland taking on cargo. Brady-Hamilton Stevedore Company was acting as an independent contracting master stevedore and was the employer of plaintiff and all of his co-workers, and was in exclusive control of the loading.

"Plaintiff and his co-workers were storing heavy rolls of paper in one of the vessel's holds. The rolls weighed about 1800 pounds, and were moved into position by means of a three-wheeled hand truck.

"The paper was being stowed over a cargo of bagged flour. A flooring of dunnage had been placed over the flour by the longshoremen. On top of the dunnage the longshoremen placed 'walking boards' (sheets of plywood 4-feet square) so as to form a flooring or runway over which to roll the hand truck.

"As plaintiff and three of his co-workers were rolling a loaded hand truck over this flooring, the left front wheel of the hand truck broke through the walking boards and the dunnage underneath. No one was hurt by this.

"Plaintiff and his fellow longshoremen surveyed the situation and discussed possible means of getting the hand truck out of the hole. Five to ten minutes later they decided to manually lift the hand truck and its load of paper out of the hole.

"While lifting on the handle of the hand truck plaintiff strained the muscles in his rib cage.

"There were a total of eight longshoremen working in the area. After plaintiff was injured the hand truck and its load was removed from the hole by using more of the longshoremen to lift on the truck together with longshoremen pulling on a rope which was tied to the handle of the hand truck.

"The court below found that the flooring was insufficient (unseaworthy) and that defendant was negligent in this respect, and concluded that this was a proximate cause of plaintiff's injury."

Defendant concedes that the vessel was unseaworthy. The only assignment brought here was that the court erred in finding that "* * * the insufficient flooring was a proximate cause of plaintiff's injury."

The problem that has divided the court is whether this, and similar cases, should be decided within the more traditional concepts of proximate cause or should the court adopt the ideas expressed in the concurring opinion. Some of the majority believe that the doctrine of proximate cause, as it has become established in this state, is preferable to the theories expressed in the concurring opinion. Others of the majority believe that such a transition, if it is wise to be made at all and if it has enduring merit, should be woven into the trial practice by the evolutionary process that has historically prevented atrophy in the common law. But regardless of reason, the majority prefer to decide this case upon the issues presented to the trial court and in the original arguments here.

Defendant primarily rests its case on *Zickrick v. Cooke et al*, 1953, 197 Or 87, 252 P2d 185. Defendant claims that Zickrick and this case are undistinguishable. We do not agree. In the Zickrick case the defendant's negligence consisted of the failure to use sufficient binder chains to hold a load of logs on a trailer. After the load had been hauled a short distance from the loading area the logs broke loose from the bindings and caused the trailer to be upset. The plaintiff, Zickrick, came upon the scene and, as a volunteer, endeavored to help relieve the situation. In the process he was injured. Defendant, in the instant case, relies on that part of the Zickrick opinion that holds that the negligence of the defendant Cooke, in that case, had come to rest before Zickrick became an actor. What this defendant overlooks is that Zickrick was a volun-

teer. Zickrick was in no different situation than any other person who may have chanced along the road and participated in the clean up. The effect of the opinion in that case was to hold that defendant, when he negligently loaded the trailer, was not obliged to anticipate that the natural and probable result of his negligence would be to injure a stranger who might aid in a removal of the debris caused by the negligent loading.

In the instant case the relationship between the parties is distinctly different. A reasonable man could have anticipated that the "walking boards" provided by defendant would not support the loads that were intended to be used upon them. And it would follow as a natural and probable result that when a load did break through that those, including plaintiff, charged with the duty of putting the loads in place would use the available means at hand to remedy the fault. Accordingly defendant could or should have anticipated that one of the workmen could be injured as a result of its negligence. Further, and in contrast to the facts in the Zickrick case, the relationship between plaintiff and defendant was one in which defendant owed a duty "* * * to the plaintiff to conform to a standard of conduct." Prosser, Law of Torts, (1955 2nd Ed), Chapter 9, § 47, 252. The evidence here supports the trial court's findings and the judgment is affirmed.

O'CONNELL, specially concurring.

The long delay in handing down the opinion in this case was occasioned by the court's interest in re-examining the proximate cause formula for the purpose of determining whether that formula should be abandoned. The case was orally argued three times. The last argument concerned only the question of

whether the proximate cause "doctrine" should be used in deciding the case at bar. The court was aided in pursuing its study of the matter by very helpful briefs prepared by amici curiae.[①] These briefs were prepared in response to an invitation by the court in which it delineated the area of inquiry by the following statement:

"The case was presented in the briefs and in oral argument along conventional lines with respect to the question of proximate cause; but the Court has been considering whether the doctrine of proximate cause, as it has been understood and applied in the past, should be abandoned in favor of views expressed by some of the recognized scholars in this field, or perhaps be supplemented by such views. Of these views, that expressed by Leon Green in various essays, some of which are noted below, appears to be the most significant. It is his position, as we understand it, that the term causation should be limited to *physical* causation and that the inquiry as to the defendant's liability for acts actually caused by him can be fully considered and answered by the jury in terms of the defendant's negligence.

"Applying this theory to the present case, it would be held (if it were decided that the case was one proper to be submitted to a jury) that two questions should be submitted to the jury:

"1. Was defendant's conduct in furnishing defective dunnage a substantial factor in *physically* producing the injury, and if so,

"2. Was defendant negligent? (This would embrace the question of whether plaintiff's conduct in attempting to extricate the cart was a foreseeable event.)

"On the other hand, under the conventional

---

[①] Amicus curiae briefs were prepared by James H. Clarke and William M. Dale, Jr.

view of proximate cause, the questions to be submitted to the jury would be:

"1. Was the defendant negligent, and

"2. Was defendant's negligence the proximate cause of the injury or was the plaintiff's conduct an intervening and superseding cause?

"Under this latter view the instruction would be along the lines of that given in Hatch v. Smail, 249 Wis 183, 23 NW2d 460, 166 ALR 746.[2]

"The Court desires briefs directed solely to the question whether it is desirable to change the law of causation in the manner above indicated. It does not desire argument on the merits of the particular case now before the Court."

The majority of the court has decided to continue with the conventional proximate cause formula. I would abandon it and adopt, in essence, the approach suggested by Leon Green as explained by him in the references previously noted. The reasons for my position are developed below.

As was noted above, the case was presented along conventional lines. Defendant argues that his tortious conduct was not a proximate cause of the plaintiff's injuries as a matter of law. It is argued that defendant's tortious conduct "spent itself" and "came

---

[2] The court then listed the following references: "For Leon Green's point of view referred to above see Green, The Causal Relation Issue in Negligence Law, 60 Mich L Rev 543; Green, Foreseeability in Negligence Law, 61 Colum L Rev 1401. Green has written on this point in other legal periodicals from time to time and has also developed the thesis in a book, Rationale of Proximate Cause. See, also, Green, Judge and Jury. Related references are Malone, Ruminations on Cause-In-Fact, 9 Stan L Rev 60; Gregory, Proximate Cause in Negligence—A Retreat from Rationalization, 6 U Chi L Rev 39; Prosser, 'Palsgraf Revisited' in Selected Topics on the Law of Torts, 191; Hart and Honoré, Causation in the Law (1959); Becht and Miller, The Test of Factual Causation in Negligence and Strict Liability Cases (1961)."

to rest" when the hand truck fell through the flooring and that plaintiff's act in attempting to extricate the truck was a superseding cause.

Defendant relies principally upon *Zickrick v. Cooke*, 197 Or 87, 252 P2d 185 (1953). In that case defendants, in loading one of their logging truck trailers, failed to bind the front of the load with the usual three binder chains. As a consequence one of the two binder chains broke and the load tipped over on the highway. The plaintiff, another log hauler, came upon the scene and volunteered aid in the work of clearing the road of the obstruction. With his assistance the trailer was pulled away from the logs and the remaining binder chain was cut. After the chain was cut plaintiff went under the logs to retrieve his tools. At that time a log rolled upon him causing the injuries for which he brought the action.

The court held that "in a legal sense" the defendant's negligence "had nothing to do with the injury which plaintiff suffered," Id. at 91, 252 P2d at 187, because "the logical consequence of the failure to use a third chain, namely, the spilling of the load, was already an accomplished fact before the forces were set in motion which resulted in the injury to the plaintiff." Id. at 95, 252 P2d at 189. The court said:

"* * * The proximate, as distinguished from the remote cause, 'involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act and occurrence related to the tortious conduct of the defendant and is itself the logical and natural cause of the injury complained of.' 1 Shearman and Redfield on Negligence (rev ed) 92, § 33, quoting *Holler v. Lowery*, 175 Md 149, 200 A 353. The substance of the foregoing has been many times stated by this court, most recently in *Birks v. East Side Transfer*

*Co.,* 194 Or 7, 19, 20, 29, 241 P2d 120. The 'idea of continuity' is wholly absent here." Id. at 92-93, 252 P2d at 188.

The court further held that the case did "not in any way involve the rule of superseding cause." Id. at 94, 252 P2d at 188.

Plaintiff attacks defendant's use of the *Zickrick* case on three fronts: (1) the present case is distinguishable in that in the *Zickrick* case the plaintiff was a mere volunteer whereas in the present case plaintiff was "charged with the duty of undoing the results of defendant's negligence, and further that defendant owed a duty to provide plaintiff with a safe place to work"; (2) the *Zickrick* case was incorrectly decided because it failed to recognize the rule stated in 2 Restatement, Torts § 443 (1934), that one who negligently creates a dangerous situation will not be heard to say that the efforts of others to undo the danger could not have been reasonably foreseen; and (3) the *Zickrick* case is inapplicable because the present case is governed by maritime law which requires the submission of the question of causation to the jury where there is the "faintest scintilla of evidence" on the issue of causation.[9]

Defendant argues that the failure to provide adequate flooring was not the proximate cause of plaintiff's injury. As we have indicated above, defendant contends that plaintiff's conduct was a superseding cause, the negligence of defendant having "spent itself."

If causation is regarded solely as a matter of fact,

[9] Plaintiff cites Lazzari v. States Marine Corporation, 220 Or 379, 349 P2d 857 (1960), a Jones Act case, in support of this proposition.

there would be no issue of causation to submit to the jury in this case because it is clear that the defendant's failure to supply proper dunnage was a substantial factor in bringing about the injury to the plaintiff. Unfortunately, however, the inquiry is made as to whether defendant's conduct is a "proximate cause" of plaintiff's injury not only to determine whether there is an actual causal connection between conduct and injury, but also to determine whether causally connected conduct gives rise to liability in the particular case. The latter inquiry calls for the formulation of policy as to the circumstances under which a person who causes or contributes to the causing of harm should be required to respond in damages. The court and the jury, each in its own sphere, participate in the formulation of this policy by which the existence and the extent of liability is defined. The court performs its function in this respect in deciding whether defendant should be regarded as owing a duty in the type of case before it (e.g., as to whether liability should be imposed upon a person for unintentionally causing nervous shock). The jury in turn decides whether the defendant's conduct meets the minimum standard of reasonable conduct in the community, i.e., the issue of negligence.[4]

Assuming the existence of a duty in the type of case before it, the court also may be called upon to exercise its usual function of determining whether there is sufficient evidence of factual cause or of the defendant's negligence to warrant submitting the case to the jury. It is not always made clear in the cases

---

[4] It has been asserted that the function of deciding whether particular conduct was a substantial factor in bringing about the result also involves policy formulation. Malone, Ruminations on Cause-In-Fact, 9 Stan L Rev 60 (1956).

whether the court is addressing itself to the problem of duty or to the question of sufficiency of evidence to prove a breach of duty. In some cases the conclusion that the defendant's conduct was not the proximate cause of the injury is, in fact, a judicial pronouncement that no duty exists in that class of case. And it seems evident in some of the cases that the conclusion that the defendant's conduct was not a proximate cause of plaintiff's injury is nothing more than a judicial finding that defendant was not negligent. In some of these cases this result is reached by holding, as a matter of law, that a reasonable person could not have foreseen an injury flowing from the particular conduct. It is impossible to determine what basis the court has used in most cases in declaring that the defendant's conduct is or is not the proximate cause of the injury.

The respective functions of court and jury become even more indistinct or confused when, as in the present case, the problem of liability is discussed in terms of intervening cause, i.e., whether the intervening conduct of another breaks the "chain" of causation. Occasionally this may be an inquiry as to whether defendant's conduct was a substantial factor in producing the injury—a question of actual causation. More frequently it appears to be a way of saying that although defendant's conduct can be connected with the injury in a substantial way, he may be found to be free from negligence if a reasonable man would not have foreseen the intervening force.

In the case at bar the question is whether defendant should be liable for an injury occurring under circumstances which involve an intervening force. The intervening force here would be plaintiff's conduct in attempting to extricate the cart from the hole. Can it

be said, as a matter of law, that there is no duty owing to plaintiff? Assuming a duty is owed, can it be said that a reasonable man could not have foreseen the intervening conduct on the part of the plaintiff in attempting to lift the cart from the hole or that defendant exercised reasonable care?

Defendant's duty seems clear. The type of risk involved here was within the scope of defendant's duty and defendant should be held liable if he was negligent. The only question involved in the present case is whether defendant was negligent.[9] Whether the issue is regarded as one of duty, negligence, or proximate causation, the inquiry is ultimately the same, i.e., how are the limits upon a defendant's liability to be established?

But it is important how these limits upon liability are examined, particularly as to whether the court or the jury has the function of defining them. The proximate cause formula combines in one inquiry the question of whether as a matter of policy liability should be imposed in the class of case before the court (the duty issue); the question of whether defendant's conduct was a substantial factor in producing the injury (the actual or physical cause issue free from any idea

---

[9] That it is not a question of causation, see Prosser, Torts 280 (2d ed 1955):

"It must be apparent that, so far as the problem of intervening causes is concerned, the question is one of the defendant's responsibility for subsequent changes in the situation he has created, brought about by new and independent factors. This is not a question of causation; in all of the cases referred to above, the causal connection between the defendant's conduct and the harm resulting is quite clear. It is a question of negligence—of the extent of the defendant's obligation. The decided cases indicate that he will be held responsible for intervening forces which he could have foreseen, or for those which are normal incidents of the risk created."

See also, 2 Harper & James, Torts § 20.5, pp. 1137, 1143 (1956).

of culpability); the question of whether there is sufficient evidence of negligence to submit the case to the jury (the usual court function of ruling upon the sufficiency of evidence); the question of negligence, assuming there is sufficient evidence on the issue to warrant submitting it to the jury (the usual function of the jury to apply the foreseeability test and to determine whether defendant failed to exercise reasonable care under the circumstances). Each of these questions must be considered separately if a negligence case is to receive proper judicial treatment. And this is true whether the inquiry as to the defendant's liability is put in terms of proximate cause or in some other form. I do not say that discarding the proximate cause formula makes it any easier to answer these separate questions. I assert only that the elimination of the formula makes it easier to see the questions which must be answered. But there is less likelihood that the court will confuse its function and the jury's function in setting the limits of a defendant's liability if the term causation is used free from any notions of culpability.

It was argued that the suggested reform simply places old wine in new bottles. The more apt metaphor is that the proposal would put the wine of actual cause in one bottle and the whiskey of culpability in another bottle, and not mix the two as we now do under the proximate cause formula.

Under the theory expressed in the cases decided by this court the scope of defendant's liability is determined by the test of foreseeability. This test is applied not only in determining whether defendant is *negligent,* but also in determining whether his negligence is the *proximate cause* of the injury. Our cases generally describe the requirement of foreseeability for

negligence and for causation in the same terms, stating that it is not essential that the precise injury be foreseen.[6] If the court and jury apply exactly the same test to determine both proximate cause and negligence, the use of the proximate cause formula is repetitious, unnecessary and confusing.[7] Even if Green's proposal is rejected, the majority of the court should remove from our negligence law the anomaly of speaking of negligence and proximate cause as if they were distinct and yet treating them as if they were one and the same thing.

The question for the jury under the foreseeability test is whether a reasonable person in the position of the defendant would have foreseen that his conduct would probably have created the risk which plaintiff encountered and which caused his injury. The issue on appeal is narrower. We have the authority to decide only whether the trier of fact under the circum-

---

[6] Herring v. Springbrook Packing Company Cooperative, 208 Or 191, 299 P2d 604, 300 P2d 473 (1956); Stout v. Madden & Williams, 208 Or 294, 300 P2d 461 (1956); Shelton v. Lowell et al, 196 Or 430, 249 P2d 958 (1952); Schweiger et ux v. Solbeck, 191 Or 454, 230 P2d 175, 29 ALR2d 435 (1951); Arneil v. Schnitzer, 173 Or 179, 144 P2d 707 (1944); Ludwig v. Zidell et al, 167 Or 488, 118 P2d 1073 (1941); Aune v. Oregon Trunk Railway, 151 Or 622, 51 P2d 663 (1935); Mollencop v. City of Salem, 139 Or 137, 8 P2d 783, 83 ALR 315 (1932); Brady v. Oregon Lumber Co., 117 Or 188, 243 P 96, 118 Or 15, 245 P 732, 45 ALR 812 (1926); Voshall v. Northern Pac. Terminal Co., 116 Or 237, 240 P 891 (1925); Miami Quarry Co. v. Seaborg Packing Co., 103 Or 362, 204 P 492 (1922); Poole v. Tilford, 99 Or 585, 195 P 1114 (1921); Chambers v. Everding & Farrell, 71 Or 521, 136 P 885, 143 P 616 (1914); Hartvig v. N.P.L. Co., 19 Or 522, 25 P 358 (1890). Cf., Danner v. Arnsberg et al, 227 Or 420, 362 P2d 758 (1961).

In some jurisdictions negligence is described in terms of the foreseeability of *some* injury as contrasted with the foreseeability of the *precise* injury in causation. 2 Harper & James, Torts § 20.5, pp. 1136-37 (1956).

[7] Green, Rationale of Proximate Cause (1927) p. 77, and passim; Green, Proximate Cause in Texas Negligence Law, 28 Tex L Rev 755 (1950).

stances of this case could reasonably find that the plaintiff's conduct in attempting to lift the cart from the hole was foreseeable.

In our adoption of the test of foreseeability for negligence and proximate cause we purport to draw the line between liability and non-liability upon the basis of fault. Defendant is at fault in failing to conduct himself in a manner to avoid the injury, if a reasonable man could have foreseen it. However, the difficulty in applying this test is that there is little more than intuition to guide one's judgment in deciding whether a risk or an injury is foreseeable.

The controversy in the leading treatises on torts as to what events are foreseeable illustrates the difficulty of arriving at a judicially serviceable formula for deciding whether the evidence is sufficient to go to the jury—Which, I repeat, is our only function in these cases.[8] And it seems quite evident in some of the cases where the test of foreseeability is ostensibly applied that liability is not predicated upon foreseeability but rather that foreseeability is ascribed to defendant's conduct after it has been decided upon some other ground that defendant should be required to respond in damages for the injury.[9] In many cases

[8] For example, see 2 Harper & James, Torts § 18.2, p. 1042, n. 38 (1956) disagreeing with Prosser as to who are foreseeable plaintiffs, and see 2 Ibid, § 20.5, p. 1134, 1135, 1140, n. 22, disagreeing with Goodhart and Seavey as to the foreseeability of the event in In re Polemis & Furness, Withy & Co., [1921] 3 K B 560.

[9] Gregory, Proximate Cause in Negligence—A Retreat From "Rationalization," 6 U Chi L Rev 39, 50 (1938).

It has been observed that the fact that defendant causes the injury in the conduct of a commercial enterprise is commonly considered in fixing the limits of his liability. "As has been pointed out before, the defendants in these cases of 'proximate cause' are in large measure railroads, public utilities, municipal corporations, industrial enterprises, automobile owners and others

it is clearly recognized that defendant may be held liable for unforeseeable consequences.⑩ Thus, applying the formula of causation, it has been recognized that defendant may be held liable where an intervening cause is a normal incident of the risk created, even though the intervening cause is not foreseeable.⑪ There

who are in a position, through rates, taxes or liability insurance, to pass the inevitable damages resulting from their activities on to the general public, or at least to distribute them over a relatively large group. In the decision whether the particular loss is to be borne by such a defendant, originally at fault if only in a lesser way, or by the innocent and helpless plaintiff, it cannot be supposed that this factor will be entirely disregarded by the courts, nor can it be expected that all defendants and all losses will be treated by all courts according to any one formula or rule." Prosser, Selected Topics from the Law of Torts, pp. 238-239 (1953).

See 2 Harper & James, Torts § 20.4, p. 1133 (1956); Loss-Shifting and Quasi-Negligence; A New Interpretation of the Palsgraf Case, 8 U Chi L Rev 729, 732-737 (1941); Gregory, Trespass to Negligence to Absolute Liability, 37 Va L Rev 359 (1951).

⑩ Gillilan v. Portland Crematorium Assn., 120 Or 286, 249 P 627 (1927) (marble vault shutter in defendant's mausoleum fell on child; mother died attempting to lift it off); Voshall v. Northern Pac. Terminal Co., 116 Or 237, 240 P 891 (1921) (plaintiff, using oxalic acid polish as part of his job, suffered lung, bronchial and heart diseases which did not affect other persons using the polish). Cf., Baker v. State Industrial Acc. Com., 128 Or 369, 274 P 905 (1929) (employer liable for death during cancer operation because prior to operation plaintiff had been weakened as a result of an injury to his collarbone suffered while on the job). See, Prosser, Torts § 48 (2d ed 1955) pp. 258-266; 2 Harper & James, Torts § 20.5, pp. 1139, 1141 (1956).

⑪ Arneil v. Schnitzer, 173 Or 179, 144 P2d 707 (1944) (defendant removed all the fire-fighting equipment from a lumber camp and left piles of debris lying about and a fire was started by a cigarette dropped by a hobo; defendant held liable for damages to adjoining property); Sullivan v. Mount. States Power Co., 139 Or 282, 9 P2d 1038 (1932) (defendant electric company held liable when wind blew a tree on electric wires causing a fire which spread to plaintiff's property); Johnson v. Hoffman et al, 132 Or 46, 284 P 567 (1930) (defendant left a ladder leaning on a marquee over a sidewalk and a third person caught his overcoat on a nail in the ladder and pulled it down on the plaintiff; defendant held liable); Miami Quarry Co. v. Seaborg Packing Co., 103 Or 362, 204 P 492 (1922) (a sunken barge left

are some who take the view that foreseeability is not a sine qua non of liability in accident cases.[⊗]

It is apparent in many of the cases involving actions brought by an employee against his employer that the employment relation is an important factor in determining the scope of defendant's liability. The rationale of these cases is usually expressed in terms of foreseeability and fault.[⊛]

on the beach was broken up in a storm which blew a portion of the barge into plaintiff's jetty; defendant held liable because it had fastened the barge with light line); Poole v. Tilford, 99 Or 585, 195 P 1114 (1921) (defendant owned building with defective elevator door; held liable when third person moved elevator leaving door open and plaintiff employee stepped into the shaft); Ahern v. Oregon Telephone Company, 24 Or 276, 33 P 403, 35 P 549, 22 LRA 635 (1893) (telephone company held liable for electrocution of plaintiff by loose wire; wire had been moved by electric company from one telephone pole to another and placed in contact with charged electric wire). See, Prosser, Torts § 49 (2d ed 1955) pp. 278-280. *Contra*, Carpenter, Workable Rules for Determining Proximate Cause, 20 Calif L Rev 229, 396, 471 at 516 (1932).

[⊗] Ehrenzweig, Negligence Without Fault (1951) (liability predicated upon whether the damages are typical in the enterprise carried on by the defendant); Workable Rules for Determining Proximate Cause, 20 Calif L Rev 229, 396 (1932) (proposal to set up a set of fixed and detailed rules to cover all cases); Legal Cause, 72 Penn L Rev 211, 343 (1924) (proximate cause is a justly attachable cause determined by the "average sense of justice"); Smith, Legal Cause in Action of Tort, 25 Harv L Rev 103, 223, 229 (1911) (defendant's act must be a substantial factor in producing damage).

[⊛] It has been asserted that liability in this class of cases is imposed not on the ground of foreseeability, but for the reason that it is deemed proper to make the enterprise bear the loss. Ehrenzweig, Negligence Without Fault (1951); Ehrenzweig, Assurance Oblige—A Comparative Study, 1950 Law & Contem Prob 445; Malone, This Brave New World—A Review of Negligence Without Fault, 25 So Calif L Rev 14 (1951); Loss-Shifting and Quasi-Negligence: A New Interpretation of the Palsgraf Case, 8 U Chi L Rev 729 (1941).

The theory of enterprise liability is, of course, present in the cases involving vicarious liability. See, 2 Harper & James, Torts § 26.7, pp. 1374-1382 (1956); Steffen, Independent Contractor and The Good Life, 2 U Chi L Rev 501, 507 (1935); Douglas, Vicarious

Defendant's liability in the case at bar can be measured within the framework of our theory of foreseeability. The jury would be warranted in finding that defendant could have foreseen that the failure to furnish adequate dunnage might have prompted plaintiff to act as he did. It is generally recognized that a defendant is not relieved of liability by an intervening act which is a common human response to the situation created by defendant's conduct.[94] Specifically, the jury could find that the plaintiff's attempt to lift the cart from the hole was a normal response of a workman under the circumstances and, therefore, was foreseeable.[95]

Liability and Administration of Risk, 38 Yale L J 584 (1929); Note, 28 Or L Rev 83 (1948).

[94] See, Shelton v. Lowell et al, 196 Or 430, 249 P2d 958 (1952); Mollencop v. City of Salem, 139 Or 137, 8 P2d 783, 83 ALR 315 (1932); Gillilan v. Portland Crematorium Assn., 120 Or 286, 249 P 627 (1927); Salmi v. Columbia & N.R.R. Co., 75 Or 200, 146 P 819, LRA 1915D, 834 (1915); 2 Restatement, Torts § 443 (1934); 2 Harper & James, Torts § 16.12, pp. 940-942 (1956); Hart and Honoré, Causation in the Law (1959), pp. 139-140; Prosser, Torts § 49 (2d ed 1955) p. 271.

[95] Ludwig v. Zidell et al, 167 Or 488, 118 P2d 1073 (1941) (jury could find that plaintiff, while operating a pair of motorized metal shears, could be expected to reach into the machinery to pull out a small piece of metal which threatened harm to the machine); Walsh v. Oregon Ry. & Navigation Co., 10 Or 250 (1882) (jury was allowed to find that it could be expected that in response to strange noise plaintiff would stick his head out of the window of moving train); Somogyi v. Cincinnati N.O. & T.P. Ry. Co., 101 F2d 480 (6th Cir 1939) (plaintiff was hit on the head by a pulley and voluntarily backed into a machine and fractured his skull; held, the jury could find that this was a "normal reaction to the stimulation of the situation"); Erie R. Co. v. Caldwell, 264 Fed 947 (6th Cir 1920) (in order to set brakes plaintiff employee of defendant railroad company jumped on a moving railroad car which had become separated because of a defective draw bar; defendant held liable); Chicago & A. Ry. Co. v. Walters, 217 Ill 87, 75 NE 441 (1905) (plaintiff lost his hand while frantically trying to manually open a defective coupling between two converging railroad cars; held, case properly submitted to the jury); Arko v. Shenango Furnace Co., 107

It is possible to distinguish the case at bar from *Zickrick v. Cooke,* 197 Or 87, 252 P2d 185 (1953), relied upon by defendant. In the *Zickrick* case plaintiff was a stranger to defendant and to the enterprise in which defendant was engaged; in the instant case plaintiff was employed for the very purpose of furthering the enterprise in which defendant was engaged. In carrying out the work which plaintiff was hired to perform it was necessary for him to use the equipment which defendant was obligated to supply. Thus defendant placed himself in a relationship with plaintiff which imposed upon him the same kind of duty which he would have owed to his own employees; that is to furnish safe equipment and a safe place to work. Having this duty, the question then is whether defendant is negligent. It is not unreasonable to conclude that defendant could have reasonably foreseen the plaintiff's reaction to the situation created by the defective dunnage. This kind of relationship did not exist in the *Zickrick* case. The court held as a matter of law that defendant was not liable. It appears that the court based its decision upon the theory that defendant owed no *duty* to plaintiff. It was said that the defendant's "negligence had spent itself"; that plaintiff was injured "as a result of forces completely disassociated from the original negligence"; and that therefore the failure to use a third binder chain "could not have been the proximate cause of the injury for which this action was brought." Id. at 92, 252 P2d at 187-188. This seems to say that defendant's duty did not include the risk that a person would be injured while helping clear

Minn 220, 119 NW 789 (1909) (plaintiff attempted to stop loaded ore car when brakes failed by thrusting pinch bar under the wheel; held, defendant employer liable as he should have anticipated a response of this sort).

the wreck caused by defendant's carelessness. The question of whether the defendant owes a duty to a person in the position of the plaintiff under such circumstances is not answered by saying that defendant's negligence "spent itself." Negligence is not something which can "run out of gas." It is a concept of liability. The proximate cause formula invites the use of such notions as continuity, remoteness and the like and diverts the court from a consideration of the factors which should determine whether there is a basis for liability under the circumstances of the particular case and who, as between court and jury, should decide the question.[18] I am of the opinion that the risk to which plaintiff in the *Zickrick* case was exposed fell within the ambit of defendant's duty and that the question of defendant's negligence should have been left to the jury.

Plaintiff attempts to bring the present case within the so-called rescue doctrine under which defendant is made liable to those injured in an effort to rescue a person or property imperiled by defendant's negligent conduct.[19] The doctrine does not quite reach the present case. There is a similarity in that defend-

[18] For a discussion of the factors which the court may be called upon to consider see Green, Duties, Risks, Causation Doctrines, 41 Tex L Rev 42 (1962).

[19] Opinion of Judge Cardozo, Wagner v. International Ry. Co., 232 NY 176, 133 NE 437, 19 ALR 1 (1921); Annotations: (attempting to save life) 19 ALR 4, 158 ALR 199; (attempting to save property) 64 ALR 515; (attempting to save life and property) 166 ALR 752; (servant attempting to save property) 61 ALR 579; 2 Restatement, Torts § 444, § 290, comment k (1934); 2 Harper & James, Torts § 16.12, p. 940 (1956); Prosser, Torts § 49 (2d ed 1955) pp. 271-272; 32 Cornell L. Q 605 (1947); 43 Mich L Rev 980 (1945); 11 Mo L Rev 317 (1946); 3 Okla L Rev 476 (1950); 25 Tex L Rev 688 (1947); 28 Wash U L Q 296 (1943). Cf., Jamerson, Adm'x. v. Witt, Executrix, 215 Or 227, 332 P2d 1054 (1959); Gillilan v. Portland Crematorium Assn., 120 Or 286, 249 P 627 (1927).

ant's negligent conduct in each instance creates a situation generating in others a compulsion to act. However, the degree of compulsion is not the same in the two types of cases. The humanitarian instinct which strongly impels the rescuer to act is not present in the instant case.[9] If there was compulsion in the present case, it was only in the sense that the job which plaintiff was employed to perform had to be completed and the cart had to be extricated from the hole to complete the work.

Whatever formula we use to establish the limits of defendant's liability we cannot lose sight of the fact that we are simply making an allocation of the appropriate functions of the court and jury. "The sole function of a rule of limitation in these cases is to tell the court that it must not let the case go to the jury." Prosser, Selected Topics in the Law of Torts, p. 234 (1953). The jury should be given wide latitude in setting these limits of liability, whether it be done under a formula of negligence or causation. The differences of opinion evidenced in the adjudicated cases involving negligence or causation suggest that judicial standards for testing liability are probably no more scientific or stable than those employed by the jury. The comment in *Jackson v. B. Lowenstein & Bros.*, 175 Tenn 535, 538, 136 SW2d 495 (1940) is appropriate:

"* * * [T]he sharp difference of opinion of the judges [in the Palsgraf case] should be a warning to appellate courts not lightly to assume

---

[9] Barnett v. Des Moines Electric Co., 10 F2d 111 (8th Cir 1925) (no liability for injury to passerby attempting to remove high voltage wire from street because no danger present to anyone); Illinois Central Railroad Co. v. Oswald, 338 Ill 270, 170 NE 247 (1930) (rescue doctrine held inapplicable to plaintiff who went between two wrecked cars not to offer aid but merely out of curiosity). See also, Devine v. Pfaelzer, 277 Ill 255, 115 NE 126 (1917); Hart and Honoré, Causation in the Law, p. 139 (1959).

the primary duty of determining liability or non-liability, in actions of tort, but to leave that duty where the Constitution has placed it, with the jury, as triers of facts, and if they act capriciously and arbitrarily to supervise their action."

The guiding principle in this class of cases is stated in Prosser, Torts (2d ed 1955), p. 282:

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description; and to this extent it may properly be said that 'proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.' [Healy v. Hoy, 115 Minn 321, 323, 132 NW 208, 209 (1911)]."[⑨]

Is there a basis for "a reasonable difference of opinion" as to the foreseeability of plaintiff's conduct in lifting the cart and the consequent injuries arising from his effort? I believe that the question of defendant's liability, either under the formula of negli-

---

[⑨] See also, Rose v. Portland Traction Co., 219 Or 1, 341 P2d 125, 346 P2d 375 (1959); Celorie v. Roberts Bros., Inc., 202 Or 671, 276 P2d 416 (1954); Hicklin v. Anders, 201 Or 128, 253 P2d 897, 269 P2d 521 (1954); Bevin v. O-W R & N Co., 136 Or 18, 298 P 204 (1931), cert. denied, 284 US 639, 52 S Ct 21, 76 L Ed 543; Gillilan v. Portland Crematorium Assn., 120 Or 286, 249 P 627 (1927); Voshall v. Northern Pac. Terminal Co., 116 Or 237, 240 P 891 (1925); Buchanan v. Lewis A. Hicks Co., 66 Or 503, 133 P 780, 134 P 1191 (1913); Hartvig v. N P L Co., 19 Or 522, 25 P 358 (1890). Cf., Wintersteen v. Semler, 197 Or 601, 250 P2d 420, 255 P2d 138 (1953); Shelton v. Lowell et al, 196 Or 430, 249 P2d 958 (1952); Kukacka v. Rock, 154 Or 542, 61 P2d 297 (1936).

gence or causation, is for the trier of fact in the present case.

There are numerous cases in which liability has been imposed upon a defendant where the intervening act of a plaintiff or a third person was no more foreseeable than plaintiff's act in the instant case. Thus in *Cooper v. Richland County*, 76 So C 202, 56 SE 958 (1907), the plantiff's horse caught its foot in a hole in defendant's bridge and plaintiff was injured in attempting to extricate the horse when it fell upon him. It was held that a jury question was presented as to whether or not the defendant's negligence in failing to repair the bridge was the proximate cause of the injury. The court said:

> "* * * The conduct of the plaintiff in attempting to rescue his horse from the dangerous position in which it was placed by the alleged wrongful act of the defendant cannot be said to have been an independent agency in causing injury to the plaintiff if he acted in such manner as was naturally and reasonably to be expected under the circumstances." 56 SE at 959.

The same result was reached on similar facts in *Stickney v. Town of Maidstone*, 30 Vt 738 (1858) and *Page v. Bucksport*, 64 Me 51 (1874).[20]

---

[20] See also, Herman v. Markham Air Rifle Co., 258 Fed 475 (E. D. Mich 1918) (defendant manufacturer sold loaded air rifle to wholesaler who sold it to retailer; plaintiff, one of the retailer's clerks, was injured when a prospective customer pulled the trigger); Trapp v. Standard Oil Co., 176 Kan 39, 269 P2d 469 (1954) (firemen, after having been called by defendant to wash away gasoline which defendant had spilled in the street, washed down the street and then touched a lighter to the street to see how effective the washing had been; in the resulting fire plaintiff's auto was damaged); Lynch v. Fisher, 41 So2d 692 (La 1949) (negligence of truck driver in colliding with car of motorist held proximate cause of injury resulting when rescuer of motorist was shot by the motorist who had become temporarily deranged

More directly related to the present case are the adjudicated cases in which it is held that an employer is required to anticipate "that workmen who are furnished with a defective appliance may be expected to try to make it work." Prosser, Torts (2d ed 1955), p. 269.[21]

The parties stipulated that the only question was one of proximate cause. The trial court's conclusion is sustainable whether the case be so regarded or the issue treated solely as a question of defendant's negligence as we have suggested. Under either theory the plaintiff's conduct was a foreseeable event. It is a foreseeable intervening cause in the language of proximate cause or foreseeable conduct in the language of negligence.

---

as a result of accident); Hines v. Morrow, 236 SW 183 (Tex Civ App 1921) (plaintiff, in attempting to extricate truck from hole left in road by defendant, broke his sound leg when his wooden leg was trapped); Shafer v. Keeley Ice Cream Co., 65 Utah 46, 234 P 300, 38 ALR 1523 (1925) (plaintiff injured by large crowd attracted by float which defendant had sponsored in parade).

[21] See also, Blaine v. Ross Lbr. Co., 224 Or 227, 355 P2d 461 (1960) (in absence of defendant's winch operator two logging truck drivers attempted to use a log loading winch not equipped with safety catch); Moen v. Aitken, 127 Or 246, 271 P 730 (1928) (plaintiff fell from plank used in carrying on work in elevator shaft, scaffolding not having been provided by employer); Buchanan v. Lewis A. Hicks Co., 66 Or 503, 133 P 780, 134 P 1191 (1913) (plaintiff cut thumb when using power saw not equipped with a guard); Manning v. Portland Ship Building Co., 52 Or 101, 96 P 545 (1908) (workman injured when attempting to use defective tongs provided to hold chisel); Smith v. Shevlin-Hixon Co., 157 F2d 51 (9th Cir 1946); Phillabaum v. Lake Erie & W. R. Co., 315 Ill 131, 145 NE 806 (1924) (plaintiff injured while standing between two railroad cars attempting to adjust a coupler which failed to work); Liberty Mutual Ins. Co. v. Great Northern Ry. Co., 174 Minn 466, 219 NW 755 (1928) (plaintiff injured when he substituted a wrench for a missing ratchet device with which to open dump door of a coal car); Myers v. Little Church by the Side of the Road, 37 Wash2d 897, 227 P2d 165 (1951) (hotel clerk, elevator operator, injured while attempting to run defective elevator).

In the course of this opinion I have noted the confusion which is generated by the use of the language and formula of "proximate cause." I wish to make it clear that I am not suggesting that the use of such language in jury instructions would constitute reversible error or that pleadings cast in the traditional terms of proximate cause are legally defective. I simply wish to open the way for the trial bench and the bar in this state to use the less ambiguous language which is appropriate in clearly separating causation (actual cause) from liability (negligence) without fear that the adoption of such language would not be acceptable upon appeal. In aid of that objective it is appropriate, at the risk of some repetition, to summarize my conclusions in this regard and to indicate briefly how they relate to present practice.

As I have already indicated, the law of causation under existing practice is so ill-defined and confused that it offers little or no aid either to the courts or to the juries in the solution of the problems of liability in the negligence cases. The principal source of confusion is the treatment of causation, both as a *factual* concept, i.e., as to whether defendant's conduct is physically connected with the injury, and as a *liability* concept, i.e., as to whether, under the circumstances, the defendant should be held liable for the injury he caused. In present practice these two concepts are fused together in one expression "proximate cause" and as a consequence both concepts become confused. To avoid this confusion I have separated the issue of *factual* causation from all other questions involved in the case and avoided the use of the term "causation" in any other sense. The issue of factual cause involves only the question of whether defendant's conduct was a substantial factor in producing the injury of which

plaintiff complains. That is to be regarded as a pure question of fact. It calls for no judgment as to whether defendant is to be held liable for what he factually caused.[22] In the typical automobile collision case the causal relation in this sense is clear—defendant's automobile collides with plaintiff's automobile and as a result plaintiff is injured. Where the fact of collision is established the real issue is not whether defendant caused the injury but rather whether defendant should be held liable for what was admittedly caused by him. As I have already stated, this is a question of evaluating defendant's conduct to determine whether he should be liable, an inquiry which should not be clouded by casting it in terms of "proximate cause" or any other kind of cause. If the fact of cause and effect is not in dispute, the language of causation should vanish from the case. In such case an instruction on the issue only serves to confuse the jury as there is no issue on the fact of actual causation. Obviously, if there is evidence to support the contention that defendant's automobile was not involved in the accident or that it was involved but that its physical involvement was not a substantial factor in producing the injury then, of course, the question would be one for submission to the jury. Thus, if there is evidence that defendant's vehicle was traveling at such a slow speed that the impact could not have caused the type of injury of which plaintiff complains, the jury could find that defendant's conduct was not a substantial factor in producing the injury.

When the question of factual cause is disposed of, the only remaining question is one of defendant's liability. The initial question of liability may be solely for the court. Thus, if plaintiff complains that she

---

[22] See again footnote 4 supra.

suffered nervous shock as a result of defendant's fail-. ure to exercise care the court must decide whether, as a matter of policy, recovery should be allowed for that kind of injury. That is a preliminary question of whether the defendant owed any duty whatsoever to the plaintiff with respect to the type of harm suffered by the plaintiff, i.e., in the example used, injury by way of nervous shock. In most cases there is no such question of duty presented. If the duty issue is resolved by the court in favor of the plaintiff, the *sole* remaining question is whether defendant was negligent. If there is no substantial evidence of negligence, the court will, of course, withhold the case from the jury. If there is evidence of negligence, that issue must be decided by the jury. The form of instruction which guides the jury's deliberation on this issue of negligence is well known to the bench and bar.[23]

Thus there is presented to the jury only two issues: (1) was defendant's conduct a substantial factor in physically producing the injury and (2) was defendant negligent? No further inquiry need be made by the jury as to whether defendant's conduct or negli-

---

[23] Oregon Jury Instructions for Civil Cases, No. 10.02, Oregon State Bar (1962) reads as follows:

"In general it is the duty of every person in our society to use reasonable care in order to avoid damage to himself or to another person in any situation in which it could be reasonably anticipated that a failure to use such care might result in such damage.

"Reasonable care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or others.

"Common law negligence, therefore, is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do, under the same or similar circumstances.

"The care should be in keeping with dangers, apparent or reasonably to be expected at the time and place in question, and not in the light of after effects or hindsight."

gence was a "proximate cause" of the injury. To the extent that this latter inquiry on "proximate cause" seeks to determine whether defendant actually caused the injury, an instruction relating to actual cause is adequate. And to the extent that the inquiry on "proximate cause" calls for a consideration of defendant's *liability,* that determination can adequately be made under an instruction which calls upon the jury to decide whether defendant was negligent.[24]

In the case at bar it is argued that plaintiff's conduct was the "proximate cause" of his injury (and that defendant's conduct was not the "proximate cause"). The *plaintiff's* conduct may be a cause in fact of the injury which he suffers, as it was in the instant case. If plaintiff's conduct is clearly a substantial factor in producing the injury (as it certainly was in the case at bar), no issue of the causal relation between plaintiff's conduct and the injury is presented and no instruction on causation should be given. Plaintiff's contributory *negligence* may be a legitimate issue, but this is a question distinct from causation.[25] When it is asserted that plaintiff's negligence is an intervening cause, defendant may be contending that (1) plaintiff's conduct is the only actual cause of his injury, meaning that defendant's conduct was not a substantial factor in actually causing the injury; or (2) that defendant was not negligent because a reasonably prudent person in his position could not reasonably have foreseen that plaintiff would act as he

[24] For a criticism of the traditional Oregon instruction on proximate cause see the specially concurring opinion of Goodwin, J. in Stoneburner v. Greyhound Corp., 232 Or 567, 375 P2d 812, 816 (1962).

[25] Causation is frequently injected into the contributory negligence issue. See, for example, 2 Harper & James § 22.2, pp. 1199-1201 (1956).

did; or (3) that even if it is conceded that defendant was negligent, plaintiff was contributorily negligent. This confusion can be obviated, or at least minimized, by eliminating all language of "proximate cause" from the inquiry as to defendant's negligence.

The negligence instruction relating to defendant's conduct can be phrased free from causation language to call for the determination of whether plaintiff's conduct was a reasonably foreseeable event. It may inform the jury that they may find that defendant was negligent if he, as an ordinary prudent person, should have foreseen plaintiff's conduct under the circumstances but failed to exercise reasonable care to avoid the injury. The same is true where the alleged "intervening" conduct of third persons is involved. If the conduct of two or more persons contributed to plaintiff's injury, the issue of factual cause must be resolved if it is present. The conduct of each of the persons may be a substantial factor in bringing about the injury, or the conduct of only one of them may be the sole cause. The resolution of that issue of fact should not be confused with the separate question of the liability of the person or persons causing the harm. If the conduct of one of the persons is found not to be a substantial factor in producing the injury, he is, of course, free from liability. If the conduct of both persons contributed substantially to the injury, either one, or both may be negligent. It is not necessary to inject ideas of *causation* into the consideration of which of these persons were negligent.

All of the questions which might arise in instructing the jury without employing language of proximate cause cannot now be anticipated. Whatever difficulty may temporarily be experienced in making the transition suggested by this opinion will be well worth the

ultimate good which will result from eradicating the vestigial language of proximate cause from our law.

The emphasis which I have placed upon the problems of instructing the jury should not draw attention away from the more basic problems which face both the trial and appellate judges in negligence cases. Those problems center around the respective functions of the court and jury. A considerable part of the confusion which has attended the treatment of negligence cases, both at the trial and appellate levels, is traceable to the failure to examine carefully the appropriate parts which the courts and the jury should play in deciding the questions of cause and liability. We have not always made clear, in holding that a case should not go to the jury, whether we are excluding the jury because there was no causal connection, or no duty, or no evidence of negligence. To understand what are the proper spheres of court and jury activity requires careful study. It is not an area in which judicial experience in sitting on cases or reviewing them on appeal alone can solve the problems which are constantly presented. Fortunately, there are excellent sources to which we can turn for instruction.[28] Of these, the work of Leon Green most closely relates to the position which I have taken.[29]

In the case at bar there is no issue of actual causation involved. The sole question is whether defendant was negligent. The trial court concluded that defendant's negligence was a proximate cause of the plaintiff's injury, or, stated differently, that plaintiff's con-

[28] 2 Harper & James §§ 15.1-15.5, 16.10, 17.1, 17.2, 18.8 (1956); Prosser, Torts pp. 191-196, 281 (2d ed 1955).

[29] Green, Judge and Jury (1930); Green, Rationale of Proximate Cause pp. 66-72 (1927); Green, Foreseeability in Negligence Law, 61 Colum L Rev 1401 (1961); Green, The Causal Relation Issue in Negligence Law, 60 Mich L Rev 543 (1961).

duct was not an intervening cause. This can be regarded as a conclusion by the trier of fact that plaintiff's conduct was a foreseeable event and that, therefore, defendant was negligent. The evidence supports this conclusion. Consequently, I agree with the majority that the judgment should be affirmed.

GOODWIN, J., concurs in this opinion.

DENECKE, J., specially concurring.

I concur in the majority opinion. However, I concur in that part of Mr. Justice O'CONNELL's opinion pointing out that the terminology of "proximate cause" is misleading and, therefore, on occasion is responsible for erroneous results. Mr. Justice O'CONNELL's remedy is to abandon the "traditional proximate cause" formula. I am unwilling at this time to do so because I am uncertain whether or not I fully enough comprehend the formula Mr. Justice O'CONNELL proposes so as to visualize the results that would follow from its application to future cases which will be before this court.

Therefore, I would examine future cases of this type with the knowledge that the language of the proximate cause doctrine is deceiving. I would likewise attempt to determine the result which would follow in such cases from the application of the proposal advocated by Mr. Justice O'CONNELL. By such a procedure I would hope to determine whether or not Mr. Justice O'CONNELL's proposal is preferable to what we now have. It is entirely conceivable that some modification of the present law or the proposed law will be found ultimately to be the most preferable.

PERRY, J., dissenting.

I am unable to agree with the majority. In my opinion the negligence of the defendant had come to

rest insofar. as the breakage of the dunnage is concerned. After the dunnage broke, it is true, a new situation was created, out of which an injury might occur, but no more so than in attempting to carry out any work of lifting.

The attempt to distinguish the case of *Zickrick v. Cooke et al.*, 197 Or 87, 252 P2d 185, on the basis that in that case the plaintiff was a mere volunteer does not answer the underlying principle of law set forth therein, which is, that negligence, having come to rest, the prior negligence is not a proximate cause in producing the subsequent injury.

The allegations and the evidence in this case disclose that the defendant and others volunteered to lift the truck and its 1,800 pound load. The same situation would have existed had these same men attempted to lift the load whether the dunnage was broken or not.

The plaintiff has relied upon the doctrine that danger invites rescue, but that doctrine only applies in "response to fear or emotional disturbance" caused by a negligent defendant. 2 Restatement of Torts, Causation, § 444, page 1191.

For the above reasons, I dissent.